[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-17155

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 13, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-20600-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROMAN RODRIGUEZ,
a.k.a. Roman Pastor Rodriguez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 13, 2006)**

Before TJOFLAT, HULL and BOWMAN,* Circuit Judges.

PER CURIAM:

_____

*Honorable Pasco M. Bowman II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Roman P. Rodriguez appeals his conviction and 120-month sentence imposed after pleading guilty to conspiracy and attempt to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). Specifically, Rodriguez contends that the district court erred in not ensuring that there was an adequate factual basis for his guilty plea and in not applying a safety-valve reduction to his sentence. After review and oral argument, we affirm.

## I. BACKGROUND

After a federal grand jury indicted Rodriguez, he ultimately agreed to plead guilty to both counts pursuant to a written plea agreement. At the change-of-plea hearing, the government and Rodriguez entered into a written factual proffer for entry of the guilty plea. The factual stipulation, which was signed by Rodriguez and his counsel, provided as follows:

> 1. On June 27, 2005, Roman Rodriguez arrived at Miami International Airport in Miami-Dade County, Florida aboard American Airlines flight #2386 from New York. On June 28, 2005, at approximately 11:20 a.m., Roman Rodriguez and another [sic] met with an Undercover Officer (hereinafter "U/C"), in Miami-Dade County, Florida. During this meeting, Roman Rodriguez and the U/C negotiated the details of the purchase of more than five (5) kilograms of cocaine from the U/C. Roman Rodriguez agreed to purchase approximately 20 kilograms of cocaine from the U/C at a price of $18,000 U.S. per kilogram. Roman Rodriguez stated that he was interested in purchasing the cocaine that would be transported and sold in the New York area. Roman Rodriguez further stated that he had a

2

driver who could transport future deliveries of cocaine, but wanted the U/C to provide the transportation to New York for the first shipment. This meeting was audio recorded.

2. During a subsequent conversation, Roman Rodriguez agreed to use his transportation and to return to Miami on a later date to complete the initial transaction of cocaine.

3. On July 11, 2005, Roman Rodriguez arrived in Miami to take possession of the twenty kilograms of cocaine. Roman Rodriguez and the U/C met in the Miami area at which time Roman Rodriguez showed the U/C approximately $20,000 U.S. as a down payment toward the purchase of the 20 kilograms of cocaine.

4. The U/C then drove Roman Rodriguez Fernandez [sic] to an [sic] warehouse in Coral Gables. At that location, the U/C showed Roman Rodriguez a bag containing what was represented as 20 kilograms of cocaine (19 kilograms of sham cocaine and one kilogram of field-tested cocaine). Roman Rodriguez handled one of the sham kilograms and the kilogram of cocaine. Roman Rodriguez asked the U/C for a knife with which to cut into the kilogram of cocaine. At that time, Roman Rodriguez was taken into custody. This transaction was video and audio taped.

The district court explained the charges against Rodriguez and the government's burden of proof. Specifically, the court noted that the government would have to prove: (1) that two or more people agreed to a plan to possess five or more kilograms of cocaine; (2) that Rodriguez intended to enter the plan; and (3) that Rodriguez was working with someone else to make the plan succeed. With the assistance of an interpreter, Rodriguez confirmed that the factual proffer was accurate and that he understood the charges against him. Rodriguez also indicated that he had discussed the charges and possible defenses with his counsel, and he expressed his desire to accept responsibility for his actions. The district court then

3

accepted his guilty plea.

At sentencing, Rodriguez argued that he was entitled to a safety-valve reduction pursuant to U.S.S.G. § 5C1.2(a) because he provided the government with all available information relevant to the offense. The district court held an evidentiary hearing to determine whether Rodriguez provided all information.

The government presented the testimony of Drug Enforcement Agency Special Agent Julissa Monzon, who was present at Rodriguez's debriefing. Monzon testified that Rodriguez identified a man named "Joel" as the person who introduced him to the transporter. Although Rodriguez stated that he had known Joel for several years, Rodriguez claimed he did not know his last name. According to Monzon, Rodriguez also contended that he did not know the transporter's name, even though authorities learned that Rodriguez had shared a motel room with the transporter's wife prior to his arrest.

Based upon this testimony, the district court found that Rodriguez had not been forthcoming with all information and denied safety-valve relief. The district court determined that Rodriguez had an offense level of 31 and a criminal history category of I, which resulted in an advisory guidelines range of 108 to 138 months' imprisonment. After rejecting the safety-valve reduction, the district court imposed the mandatory-minimum sentence of 120 months' imprisonment under 21

4

U.S.C. § 841(b)(1)(A)(ii), five years of supervised release, and $18,000 in criminal forfeiture. This appeal followed.

## II. DISCUSSION

**A. Adequate Factual Basis for the Guilty Plea**

On appeal, Rodriguez argues that the district court plainly erred under Fed. R. Crim. P. 11 by failing to ensure that there was an adequate factual basis for the conspiracy charge before accepting his guilty plea.[1] Specifically, Rodriguez contends that the factual proffer did not support the conspiracy charge because it did not establish that there was an unlawful agreement between Rodriguez and a non-government agent.

In order to establish Rodriguez's conspiracy conviction, the government had to prove the existence of an agreement between two or more people. See United States v. Simpson, 228 F.3d 1294, 1298 (11th Cir. 2000). "If there are only two members of a conspiracy, neither may be a government agent or informant who aims to frustrate the conspiracy." United States v. Arbane, 446 F.3d 1223, 1228 (11th Cir. 2006). The existence of an agreement may be inferred from the

---

[1]When a defendant has not challenged the factual basis of his guilty plea in district court, we review for plain error. United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003). To establish plain error, Rodriguez must show a reasonable probability that, but for the error, he would not have entered the plea. See United States v. Dominguez Benitez, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340 (2004).

defendant's conduct or from circumstantial evidence of a scheme. Id.

At the plea colloquy, the district court informed Rodriguez that the government would have to prove that two or more people entered into a plan to possess five or more kilograms of cocaine. Rodriguez stipulated to the written factual proffer, which provided, "Roman Rodriguez further stated that he had a driver who could transport future deliveries of cocaine . . . . During a subsequent conversation, Roman Rodriguez agreed to use his transportation and to return to Miami on a later date to complete the initial transaction of cocaine."

Rodriguez's claim that the government did not identify another person involved in the conspiracy besides the undercover officer is belied by the stipulated facts. In the factual proffer, Rodriguez expressly admitted that he had a driver who would transport the cocaine and that Rodriguez would use his transportation to complete the initial transaction. This admission is sufficient to establish the existence of at least two conspirators. Accordingly, there was an adequate factual basis for Rodriguez's guilty plea.[2] In any event, Rodriguez cannot show plain error, and we affirm his convictions.

**B. Safety-Valve Reduction**

Rodriguez also argues that the district court erred in denying safety-valve

_____

[2]Even if the factual proffer had been inadequate, Rodriguez has not shown a reasonable probability that he would not have entered a guilty plea absent the error.

relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a).[3]  The district court's sole basis for denying a reduction under § 3553(f) was a finding that Rodriguez had not provided all information concerning his drug conspiracy.

"Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met." See United States v. Brehm, 442 F.3d 1291, 1299 (11th Cir.), cert. denied, __ U.S. __, 127 S. Ct. 457 (2006).  The parties dispute whether Rodriguez satisfied § 3553(f)(5), which requires that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ."  See also U.S.S.G. § 5C1.2(a)(5).  This factor is considered a "tell-all provision" in which the defendant "has an affirmative responsibility to truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct." United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004) (quotation marks and citation omitted).  Rodriguez bears the burden of showing that he has met all conditions for the safety-valve reduction.  See id.

---

[3]"When reviewing a district court's safety-valve decision, we review for clear error a district court's factual determinations . . . [and] de novo the court's legal interpretation of the statutes and sentencing guidelines."  See United States v. Poyato, 454 F.3d 1295, 1297 (11th Cir. 2006) (quotation marks and citation omitted).

Rodriguez contends that he satisfied § 3553(f)(5) by revealing all information about the offense of conviction because the broader requirement to reveal "all relevant conduct"[4] predated United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). A sentencing court under Booker still must consider the guidelines, however, and correctly calculate the guidelines range in the same manner as the guidelines were interpreted before Booker. See United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005); see also Brehm, 442 F.3d at 1300 ("Booker does not render application of individual guideline provisions advisory because the district court remains obligated correctly to calculate the Guidelines range . . . ."). Post-Booker, we continue to require defendants to provide information on all conduct relevant to the offense to qualify for a safety-valve reduction. See United States v. Milkintas, __ F.3d __, No. 05-13256, 2006 WL 3431875, at *4 (11th Cir. Nov. 30, 2006) (noting that safety-valve relief is available only if defendants satisfy their burden of "coming forward with all information in [their] possession that was relevant to the criminal enterprise").

Information about the identity of Rodriguez's driver is directly related to his offense. When the offense is conspiracy to possess with intent to distribute drugs,

---

[4]The sentencing guidelines define "offense or offenses that were part of the same course of conduct or of a common scheme or plan," as used in § 5C1.2(a)(5), to mean "the offense of conviction and all relevant conduct." See U.S.S.G. § 5C1.2 cmt. n.3.

the scope of information that must be disclosed includes "information relating to the involvement of others and to the chain of the narcotics distribution." United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997). Rodriguez stipulated in the factual proffer that "he had a driver who could transport future deliveries of cocaine." Rodriguez claimed that he did not know the identity of this transporter, but Monzon testified that Rodriguez shared a motel room with the transporter's wife. Monzon also testified that Rodriguez did not provide the last name or telephone number for "Joel," the man who introduced him to the transporter, despite being friends with "Joel" for several years. In light of this uncontradicted testimony, the district court reasonably concluded that Rodriguez had not met his burden to reveal all information relating to the involvement of co-conspirators. Accordingly, we conclude that the district court did not clearly err in denying safety-valve relief.

## III. CONCLUSION

For the foregoing reasons, we affirm Rodriguez's convictions and sentence.

**AFFIRMED.**