[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 17, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13426
Non-Argument Calendar

_____

D. C. Docket No. 03-20879-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT BREHM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 17, 2006)**

Before BIRCH, MARCUS  and WILSON, Circuit Judges.

PER CURIAM:

Robert Lyman Brehm appeals his 120-month sentence for importing and

possessing heroin with intent to distribute.  The appeal requires us to consider

whether the district court abused its discretion in determining that Brehm failed to provide a fair and just reason for withdrawing his plea. It also presents an issue of first impression as to whether the Supreme Court's decision in United States v. Booker[1] rendered the eligibility requirements for safety-valve relief under 18 U.S.C. 3553(f), U.S.S.G §§ 5C1.2 & 4A1.1, advisory or otherwise permitted courts discretion as to the imposition of mandatory minimum sentences. We find no error in the district court's determination and hold that Booker did not grant such discretion. Accordingly, we AFFIRM.

## I. BACKGROUND

Brehm was indicted on two counts: (1) importation of heroin, in violation of 21 U.S.C. § 952(a) and (2) possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). During pretrial discovery, Brehm submitted notice that he intended to introduce expert evidence relating to a mental disease or defect or other mental condition bearing on the issue of his guilt. The government requested that Brehm submit to a psychiatric examination and the court so ordered. The 12 April 2004 report on the examination stated that Brehm "clearly [met] the diagnostic criteria for Schizophrenia." R1-25 Attachment at 8. It clarified, however, that (1) Brehm's alcohol, marijuana, and heroin use exacerbated his

_____

[1] 543 U.S. 220, 125 S. Ct. 738 (2005)

mental illness by causing significant paranoia (2) that during the examination, Brehm functioned adequately despite receiving no treatment for his psychotic illness; and (3) if Brehm routinely received anti-psychotic medication, he would likely realize a significant decrease in psychotic symptoms, including decreased auditory hallucinations and improved attention and concentration; but that (4) successful treatment of Brehm's psychotic illness required complete abstinence from illegal drugs and alcohol. Id. at 9-10.

Brehm's competence to stand trial was also assessed by way of an interview designed to evaluate an individual's ability to articulate understanding of the nature and consequences of criminal charges and court proceedings, as well as the ability to assist counsel in a defense. In the course of this examination, Brehm stated that he understood his current criminal charges and correctly identified them as felonies. Id. at 10. He also understood the meaning of probation and, with regard to guilty pleas:

> Mr. Brehm knew and understood the pleas of "guilty," "not guilty," and "not guilty by reason of insanity." He indicated [he] was not sure how he planned to plead in relation to the current case and that he was going to talk with his attorney about this issue. He indicated he "might" plead not guilty by reason of insanity if advised to do so by his attorney, though he would have to think about it. Although Mr. Brehm was not entirely sure what a plea bargain was, this issue was discussed with him and he was able to describe it as "pleading guilty in exchange for lesser charges" when asked about it during a second interview occurring one week later. The defendant continued to have

3

some difficulty recalling what rights were given up when accepting a plea bargain, though he understood this issue when it was explained to him. Mr. Brehm indicated he would consider accepting a plea bargain if one were offered to him in the current case.

Id. at 11. Brehm was found to understand the roles of the prosecuting attorney, the defense attorney, and the judge and was able to articulate an understanding of appropriate courtroom behavior and to discuss courtroom procedure. Id. Even though Brehm had trouble in several areas during the initial competency interview, including describing the role of witnesses, whether or not he was required to testify in his own case, what to do if he disagreed with his attorney, the definition of a plea bargain, and what to do if witnesses lied about him, these issues were discussed and he found to have retained the information gained from the discussions several days later. Id. at 11-12.

Because Brehm continued to experience difficulty with certain areas, however, such as the rights relinquished when accepting a plea bargain, he later underwent another competency examination designed to assess a defendant's capacity to understand and reason legal issues through questions about the prosecution of a hypothetical defendant. His competency to stand trial fell within the "Minimal/No impairment range." Id. at 12. The examiner concluded that "Brehm ha[d] a generally good understanding of the nature and consequences of the criminal charges and of the court proceedings. He [was] willing to work with

4

his attorney, but lack[ed] motivation in relation to the outcome of his case."[2]  Id.

The report also cautioned that Brehm's mental status would be subject to deterioration due to "stress or other precipitating factors, especially in light of the fact he is not taking antipsychotic medications," and that such deterioration would "likely directly impact his competence to stand trial."  Id. at 12-13.

The report from a 30 June 2004 psychological examination ordered by Brehm's court appointed counsel concluded that Brehm was experiencing a severe mental disorder, with symptoms of a generalized anxiety disorder, drug dependence, and a schizoid personality disorder.  R1-35 Attachment at 8.  His scores from this examination indicated that he would "require prison-provided mental health services when incarcerated."  R1-35 at 7.  Nevertheless, this examiner found Brehm to have a "factual and rational understanding of the legal process and [to be able to] relate to and assist in his defense."  Id. at 8.

The plea hearing took place one month after this last exam, on 26 July 2004.  At the hearing, the court instructed Brehm:

> [I]f you do not understand a question, please do not answer it.
> Ask your attorney or ask me to explain it and we will do our very best
> to explain it to you, and we'll try.  Between the two of us I am sure

---

[2]The examiner further explained this lack of motivation as a "long-standing personality characteristic . . . as evidenced by [Brehm's] repeated truancy from school and lack of motivation to attempt employment."  Id. at 12.

we'll be able to explain any question to your satisfaction so that you understand it.

If you answer a question, I'm going to assume that you understood it and if somebody is reading the record that we are making of this now and they hear you answering a question I would expect that they would be within their rights to assume that you understood it.

You understand what I just said?

R5 at 3-4. Brehm responded, "Yes." Id. at 4. When asked if he was presently under the influence of any drug or narcotic or alcohol, Brehm responded, "No," and that he had not had any since he had been arrested in October 2003. Id. at 5. Then the following exchange occurred:

[District Court]: Have you ever been treated for any mental illness?

[Brehm]: Yes.

[District Court]: And what is that?

[Brehm]: They diagnosed me with schizo effective disorder.

[District Court]: When was that?

[Brehm]: I think it could have been as early as 2000. But it couldn't have been later than 2001.

[District Court]: I did order an evaluation of you. I don't remember exactly why but I did order an evaluation. In December 2003 you went to the Federal Correctional Institution in Wasika, Minnesota; is that correct?

[Brehm]: Yes.

6

[District Court]: And they evaluated you and they came to the conclusion that although you did have a mental disease or defect, which is probably what you said it was; I'm not positive, the symptoms are not currently such as to substantially impair your ability to understand the nature and consequences of the court proceedings against you. So they determined you are able to assist your attorney and to knowingly enter a plea of not guilty in this case. Do you agree with them that you can enter a plea?

[Brehm]: I have some trouble but I understand.

[District Court]: Counsel you've reviewed the report, have you not?

[Brehm's Counsel]: Yes, I have, your Honor.

[District Court]: Are you satisfied that your client meets the standard of understanding for this hearing?

[Brehm's Counsel]: Yes, your Honor. For the record, I had Mr. Brehm independently evaluated for competence before we came here because of the amount of time that elapsed when he came back from Minnesota. I was afraid he might have lapsed back.

[District Court]: When did that happen?

[Brehm's Counsel]: That happened a couple of weeks.

[District Court]: They also concurred he was of sound mind to assist you in these proceedings?

[Brehm's Counsel]: Yes, your honor.

Id. at 5-7. When asked whether he was satisfied that Brehm understood the

proceedings, Brehm's counsel responded, "I am." Id. at 7. When the court asked

Brehm if he was fully satisfied with the representation and advice of his counsel,

7

he responded, "Yes." Id. The following exchange then occurred regarding

Blakely v. Washington:[3]

> [District Court]: Have you and your attorney discussed the recent
> Supreme Court case of Blakely vs. Washington at all?
>
> [Brehm]: No.
>
> [District Court]: Let me just ask you this. Do we have any issue as to
> any aggravating factors, [Government]?
>
> [Government]: I don't believe we do, your Honor. The indictment
> charges the defendant with importation and possession with intent to
> distribute one kilogram or more of heroin. The total weight of heroin
> was 2.96 kilograms.
>
> [District Court]: And there is no issue as to the amount?
>
> [Government]: No issue as to the amount. The sentencing range and
> guidelines is one kilogram to three kilograms. So we have charged
> under the three. So I don't think –
>
> [District Court]: You do understand – I don't know if I really want to
> get into a complicated colloquy with Mr. Brehm concerning waiver of
> aggravating factors. If you haven't charged him in the indictment,
> you ain't going to get him, do you understand that?
>
> [Government]: I understand that, your Honor.

Id. at 8-9.

Brehm acknowledged that he understood that his plea waived his rights to a

jury trial, to remain silent, to cross-examine witnesses, to call witnesses, and to

---

[3]542 U.S. 296, 124 S. Ct. 2531 (2004).

testify on his own behalf. Id. at 9-10. At the court's request, the government stated that: "on both counts of the indictment the maximum penalty and the mandatory minimum penalty are the same. It's a ten year mandatory minimum on both Count 1 and Count 2. And a maximum of up to life imprisonment." Id. at 10. Brehm then affirmed that he understood he was exposing himself to the maximum penalty recited, that he had discussed his sentencing with his attorney, and that he understood that the court had the authority to impose a sentence that might be above or below the Sentencing Guidelines range. Id. at 11. Brehm also indicated that he understood to what he was pleading guilty. Id. at 12.

The government then stated the facts of Brehm's alleged offense, describing in some detail how United States Customs and Border Protection inspectors had discovered 2.96 kilograms of a brown powdery substance, which tested positive for heroin, concealed within the lining of Brehm's suitcase as he returned from a trip to Rio de Janeiro. Id. at 13.

The following exchange then occurred:

[District Court]: Mr. Brehm, this is very important now. You heard what the government said. Do you agree with those facts, that that is what the government could prove if this case were to go to trial and that is what you are pleading guilty to?

[Government]: Further, 2,960 grams of heroin is an amount consistent with the intended distribution of heroin.

9

[District Court]: You heard what the government said. Were the facts that they are prepared to prove at trial, do you believe that those facts are true and that they could prove them if it went to trial?

[Brehm]: Probably, yeah.

Id. at 13-14. Brehm then entered a plea of guilty to both counts and the court found that Brehm's guilty plea was made knowingly and voluntarily. Id. at 14.

For purposes of sentencing, the probation office started the calculation with a base offense level of 32 based on U.S.S.G. § 2D1.1(c)(4), which is applicable to a defendant responsible for at least one but less than three kilograms of heroin, and then recommended an adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b), reducing the offense level by three for a final base offense level of 29. Brehm had a subtotal of three criminal history points and received an additional two criminal history points under U.S.S.G. § 4A1.1(e) because he committed the instant offense less than two years after release from imprisonment. Five criminal history points gave Brehm a criminal history category of III resulting in a suggested guidelines imprisonment range of 108-135 months. Pursuant to U.S.S.G. § 5G1.1(c)(2), however, because the statutory minimum term of imprisonment for Brehm's offense under 21 U.S.C. §§ 960(b)(1)(A) and 841(a)(1) was ten years, his guidelines imprisonment range was adjusted to 120-135 months.

At the sentencing hearing on 27 January 2005, the only unresolved issue was whether Brehm was eligible for a safety-valve reduction pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2, which allow for sentencing without regard to any statutory minimum when specific requirements are met. If he had qualified for a safety-valve reduction, Brehm could have been sentenced below 120 months, within a range of 108 to 120 months. One of the requirements for safety-valve relief, however, is having no more than one criminal history point. § 3553(f)(1). The court rejected Brehm's argument that Booker made the assessment of criminal history points discretionary but continued sentencing to allow Brehm's counsel additional time to confirm that Brehm's criminal history points were correctly calculated.

Brehm then filed a motion to withdraw his guilty plea and requested a hearing, arguing that his plea had been involuntary because his history of schizophrenia and a relapse of that condition prevented him from understanding the nature of the constitutional protections he was waiving and the charges against him. Specifically, Brehm argued that, when he entered his guilty plea, he was unaware of a previous conviction in 2002, at which time he had been hospitalized for schizophrenia, and as a result, he did not have a rational understanding of the consequences of his present guilty plea. The district court denied Brehm's motion

11

after finding that Brehm's allegations were not sufficient to overcome the strong presumption that his plea had been voluntary. R1-50 at 3. The court further found that sufficient judicial resources had been expended in Brehm's case in that he had been granted three continuances as to his sentencing. Id. Finally, the court noted the government's argument that it would be prejudiced by the withdrawal because the plea had been taken more than eight months previously and the government had "limited its investigation to establish[ing] [Brehm's] guilt." Id. at 3-4.

Brehm renewed his motion to withdraw his guilty plea, this time alleging that he may have been under the influence of medication during his plea colloquy, even though he testified otherwise at the time. Brehm explained that he had been under the mistaken impression that the court was inquiring about "illegal substances," rather than legally prescribed medication. R1-60 at 5. He argued further that, even though the government had explained at the plea colloquy that Brehm was subject to a ten-year mandatory minimum sentence as to both counts, the court had failed to address Brehm's understanding of a mandatory minimum.

At Brehm's reconvened sentencing hearing, the district court denied Brehm's renewed motion to withdraw his guilty plea as well as his renewed objection as to his criminal history points in connection with which he had argued that (1) the court had the discretion pursuant to Blakely and Booker and in light of

12

the advisory nature of the guidelines, to determine Brehm's criminal history points and (2) based on Brehm's extensive history of mental illness, these criminal history points were overrepresented. The court found that <u>Booker</u> did not permit it to ignore minimum mandatory sentences and that, in any event, the criminal history points were not inappropriately ascribed to him. R8 at 17-18. The court, stating that it had considered the factors set forth in 18 U.S.C. § 3553(a)(1) through (7), imposed a sentence of 120 months to be followed by five years of supervised release, which was both within the advisory guideline range and in accordance with the mandatory minimum.

On appeal, Brehm argues that (1) the district court abused its discretion by failing to grant his request, prior to sentencing, to withdraw his guilty plea based on his suffering from a mental illness that he alleges affected his ability to fully comprehend the nature and consequences of his plea; and (2) <u>Booker</u> rendered the eligibility requirements for safety-valve relief advisory and permitted the district court to exercise its discretion to grant relief from the mandatory minimum sentence.

## II. DISCUSSION

A. <u>Withdrawal of Guilty Plea</u>

Brehm first argues that the district court erred in denying his request to withdraw his guilty plea, or at a minimum, in refusing to hold a hearing to assess the various issues raised in his motions. More specifically, he complains that his attorney only had three months to review the case with him, which, in combination with the district court's dispensing with the <u>Blakely</u> inquiry entirely at his plea colloquy, resulted in his failure to grasp the effect of <u>Blakely</u> on his sentence. Brehm also argues that the "court's one sentence inquiry . . . regarding . . . the mandatory minimum . . . was wholly inadequate." Appellant's Br. at 21. Finally, although he acknowledges the government's expert's finding that Brehm clearly met the diagnostic criteria for schizophrenia yet was not rendered unable to understand the nature and consequences of the proceedings against him, Brehm points out that the same expert wrote that his condition might deteriorate under stress or other precipitating factors.

We "review the denial of a request to withdraw a guilty plea for abuse of discretion." <u>United States v. Freixas</u>, 332 F.3d 1314, 1316 (11th Cir. 2003). There is no abuse of discretion unless the denial is "arbitrary or unreasonable." <u>United States v. Weaver</u>, 275 F.3d 1320, 1328 n. 8 (11th Cir. 2001). A district court's

14

refusal to hold an evidentiary hearing is also reviewed for abuse of discretion. See United States v. Stitzer, 785 F.2d 1506, 1514 (11th Cir.1986). It does not amount to abuse of discretion when a court has conducted extensive Rule 11 inquiries prior to accepting the guilty plea. Id. The Federal Rules of Criminal Procedure require a district court, before it accepts a plea of guilty, to inform the defendant of his rights relevant to his guilty plea and determine that he understands them. Fed. R. Crim. P. 11(b)(1).

After the district court has accepted a plea and before sentencing, a defendant may withdraw a guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In determining whether the defendant has met his burden to show a "fair and just reason," a district court "may consider the totality of the circumstances surrounding the plea." United States v. Buckles, 843 F.2d 469, 471-72 (11th Cir. 1988). In the course of this inquiry, we consider "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Id. at 472 (citations omitted). "The good faith, credibility and weight of a defendant's assertions in support of a motion [to withdraw a guilty plea] are issues for the trial

15

court to decide." Id. Additionally, "[t]he longer the delay between the entry of the plea and the motion to withdraw it, the more substantial the reasons must be as to why the defendant seeks withdrawal." Id. at 473.

Here, the district court found that: (1) Brehm was represented by counsel; (2) Brehm's guilty plea was voluntary, he was competent to understand the indictment, and he acknowledged waiving his rights to a jury trial; (3) sufficient judicial resources had been expended in Brehm's case in that he had been granted three continuances of his sentencing; and (4) the government would be prejudiced by the withdrawal because the plea had been taken over eight months previously, causing the government to limit its investigation in establishing Brehm's guilt. Further, Brehm conceded at his plea colloquy that he understood the minimum and maximum penalties of his sentence as well as the court's authority to impose a sentence above or below the guideline range and that he was satisfied with his counsel's representation. Further, the district court did not "dispense" with discussion relating to the effects of Blakely on Brehm's sentence but, rather, correctly determined that no legal issue in Brehm's case warranted a discussion of Blakely. Additionally, Brehm failed to prove that he was not mentally competent to participate in his plea colloquy since both the court-ordered mental evaluation and that initiated by Brehm's attorney for fear of a lapse confirmed that Brehm

16

suffered from mental illness but concluded that he had a factual and rational understanding of the legal process, could relate to and assist in his defense, and was competent to stand trial. Finally, Brehm did not seek to withdraw his plea until April 2005, long after he had pled guilty in July 2004. For these reasons, we find the district court did not abuse its discretion in determining that Brehm had failed to demonstrate a "fair and just reason" for requesting withdrawal of his guilty plea or in denying the motion for a hearing on that issue.

B. Safety-valve Relief

Brehm next argues that Booker gave the district court discretion as to the requirements for safety-valve relief and erred when it determined that it was without authority to sentence him below the statutory mandatory minimum sentence of 120 months. Whether the Supreme Court's decision in Booker renders calculation of criminal history points under the Sentencing Guidelines for the purpose of determining eligibility for safety-value relief pursuant to 18 U.S.C. § 3553(f) is a question of law subject to de novo review. United States v. Williams, 431 F.3d 767, 769 (11th Cir. 2005) (per curiam). It is also an issue of first impression for us.

Safety-valve relief allows for sentencing without regard to any statutory minimum, with respect to certain offenses, when specific requirements are met. 18

17

U.S.C. § 3553(f). Section 3553(f) sets five conditions, the first of which is that the defendant not have more than "1 criminal history point, as determined under the sentencing guidelines." Id.; United States v. Orozco, 121 F.3d 628, 630 (11th Cir. 1997) (per curiam). The Guidelines incorporate this statutory provision in § 5C1.2 and criminal history points are calculated pursuant to § 4A1.1.

In Booker, the Supreme Court held that the Federal Sentencing Guidelines violate the Sixth Amendment right to a trial by jury to the extent that they permit a judge to increase a defendant's sentence based on facts that are neither found by the jury nor admitted by the defendant. Booker, 543 U.S. at 244, 125 S. Ct. at 756. To remedy this violation, the Court excised two specific provisions of the Sentencing Reform Act of 1984 – 18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range) – thereby rendering the guidelines "effectively advisory." Id. at 245, 125 S.Ct. at 756-57. As a result, a sentencing court must still "consider Guidelines ranges," but it may "tailor the sentence in light of other statutory concerns as well." Id. at 245-46, 125 S. Ct. at 757 (citing 18 U.S.C. § 3553(a)). Additionally, we have held that "[a]fter Booker, sentencing requires two steps. First, the district court must consult the Guidelines and

18

correctly calculate the range provided by the Guidelines. Second, the district court must consider [the18 U.S.C. § 3553(a)] factors to determine a reasonable sentence." United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (per curiam) (citations omitted).

Although we have not yet specifically addressed Brehm's issue, the Second Circuit has done so in United States v. Barrero, 425 F.3d 154 (2d Cir. 2005).[4] In Barrero, the defendant argued that the district court should have considered the guidelines advisory for purposes of calculating his criminal history points and that 18 U.S.C. § 3553(f)(1), "by virtue of its reference to and incorporation of a Guidelines term (the defendant's 'criminal history points'), should be considered advisory post- Booker." Barrero, 425 F.3d at 155. Rejecting this argument, the Second Circuit explained that the calculation of criminal history categories is prerequisite to calculation of the correct Guidelines sentencing range and that, even after Booker, district courts remain obligated to correctly calculate the guideline range pursuant to 18 U.S.C. § 3553(f)(1). Barrero, 425 F.3d at 156-57. The court

_____

[4]Brehm asserts that the court in United States v. Duran, 383 F. Supp. 2d. 1345 (D. Utah 2005), found the safety-valve provision should be considered advisory and thus allowed the court to disregard the statutory mandatory minimum. The defendant in that case, however had clearly qualified for safety valve relief. Id. at 1348. At issue in that case was whether the court should be forced to sentence within the Guidelines range (below the mandatory minimum) or whether it could sentence below that range. Id. at 1349. The court found that the recommended guidelines range was still only advisory under Booker. Id. Thus, whether the eligibility criteria for safety valve relief were also merely advisory was not addressed by that court.

19

in Barrero went on to note that not only did the defendant's contentions directly conflict with the plain terms of the statute, but "[b]y arguing that we should read section 3553(f) as applying even where the defendant has more than one criminal history point under the Guidelines, [the defendant] in effect asks [the court] to excise subsection (f)(1), presumably on Sixth Amendment grounds." Id. at 157. The court declined to do so.

We agree. The Second Circuit's reasoning in Barreo, that Booker does not render application of individual guideline provisions advisory because the district court remains obligated correctly to calculate the Guidelines range pursuant to 18 U.S.C. § 3553(f)(1), is consistent with our holding in Talley. Talley, 431 F.3d at 786. Further, we agree that to treat calculation of the safety-valve eligibility criteria as advisory would, in effect, excise 18 U.S.C. § 3553(f)(1). Accordingly, we find the district court did not err when it determined that Booker did not permit a court to discretion to grant relief from the mandatory minimum sentence.

### III. CONCLUSION

Brehm appeals his 120-month sentence for importing and possessing heroin with intent to distribute. We find that the district court did not abuse its discretion in determining that Brehm failed to provide a fair and just reason for withdrawing his plea of guilty. Because we hold that the Supreme Court's decision in Booker

20

did not render the calculation of eligibility requirements for safety-valve relief advisory, we further find that the district court did not err in finding it had no discretion to grant Brehm relief from the statutory mandatory minimum sentence of 120 months for each of his offenses. Accordingly, we **AFFIRM** both the district court's ruling on the motion to withdraw the guilty plea and Brehm's sentence.