[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 27, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13070
Non-Argument Calendar

_____

D. C. Docket No. 03-00298-CR-T-23-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LENIN V. PEREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 27, 2007)**

Before BLACK, HULL and MARCUS, Circuit Judges.

PER CURIAM:

After pleading guilty, Lenin V. Perez appeals his conviction and 21-month

sentence for receiving kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), and 18 U.S.C. § 2. After review, we affirm Perez's conviction and dismiss his appeal of his sentence.

## I. BACKGROUND

### A. Plea Agreement and Guilty Plea

Perez, a former postal worker, was the president of the local postal workers union in Tampa, Florida. After an investigation by the United States Office of Postal Service Inspection, Perez and a codefendant were indicted on thirty-three counts of soliciting and receiving, and conspiring to solicit and receive, kickbacks. According to the government, Perez and his codefendant received kickbacks for referring postal workers to a doctor, a chiropractor and a massage therapist for medical care for which claims were made under the federal worker's compensation program.

Perez pled not guilty. On the day of trial, however, Perez entered into a written plea agreement and pled guilty to one count of the indictment. Perez's plea agreement contained a sentence appeal waiver providing that Perez waived his right to appeal his sentence or challenge it collaterally on any ground, except "(a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b)

2

the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution."

At the plea hearing, Perez indicated, among other things, that he had not been forced to plead guilty and that no one had threatened him or promised him anything other than what was set forth in the plea agreement in order to get him to plead guilty. The magistrate judge also explained to Perez that he had a right to appeal his sentence and that he was waiving that right by agreeing to the terms of the plea agreement. Perez indicated that he understood.

Following the plea hearing, the magistrate judge recommended that Perez's plea agreement and guilty plea be accepted and that Perez be adjudged guilty. Perez did not file objections to the magistrate judge's report and recommendation, and the district court accepted Perez's guilty plea.

## B.    First Sentencing Hearing

At sentencing, Perez objected to various Sentencing Guidelines enhancements recommended in Perez's presentence investigation report ("PSI"). The district court overruled Perez's objections and adopted the PSI's guidelines calculations, which produced an advisory guidelines range of 21 to 27 months' imprisonment. The district court also denied Perez's request for a downward departure based on his ill health.

During his allocution, Perez appeared to protest his innocence. The district court asked Perez if he wished to plead innocent, to which Perez responded that he "wanted to go to trial the whole time, because [he was] innocent of the charges" and that he had been told by lawyers that "they were going to arrest [his] daughter to squeeze [him] . . . ." After consulting with his counsel, Perez requested permission to file a motion to withdraw his guilty plea. The district court granted Perez's request and continued the sentencing hearing.

**C.    Motion to Withdraw Guilty Plea**

Perez filed a motion to withdraw his guilty plea, arguing that his plea had been coerced and that he was not in fact guilty. At the same time, Perez's counsel, Patrick Doherty, filed a motion to withdraw. The district court granted Doherty's motion and appointed substitute counsel.

At an evidentiary hearing, Perez presented four witnesses, including his wife, his daughter, his daughter's attorney and himself. According to these witnesses, prior to Perez's guilty plea, the government began investigating Perez's daughter and was seeking her fingerprints and handwriting samples. Initially, Perez did not believe that the government could prove a case against his daughter because she had done nothing wrong. On the morning of trial, Perez arrived at the courthouse intending to proceed to trial. Perez soon learned that the government

4

was offering plea agreements and that his codefendant had decided to accept.

Perez's attorney, Doherty, presented Perez with a copy of the written plea agreement from the government. Perez did not recognize the names of the individuals that he was alleged in the plea agreement to have referred for kickbacks. Perez objected and told his attorney he would not agree to a felony charge. According to Perez, as well as his wife and daughter who were present during plea negotiations, Doherty repeatedly told Perez that if he did not plead guilty, Perez would "kick his way into prison" and the government would arrest and prosecute his daughter. After Perez's daughter begged him to sign the plea agreement, he did so.

In rebuttal, the government called Doherty, Perez's counsel at the plea hearing. Doherty testified that while preparing for trial he learned from the government's attorney that there was another mail fraud investigation involving Perez and that Perez's daughter was a potential codefendant in that investigation. Doherty discussed with Perez the potential for additional charges against Perez and his daughter. According to Doherty, Perez was not concerned.

Doherty also testified that several months before trial he and Perez had discussed the possibility of entering into a plea to a misdemeanor charge and that about a month before trial Perez wrote Doherty a letter expressing interest in

5

avoiding trial. However, Perez still voiced no concern about possible charges against his daughter. Doherty also reviewed the Sentencing Guidelines with Perez and concluded that Perez was possibly facing between ten and sixteen months in prison.

According to Doherty, Perez instructed Doherty to resolve Perez's case without going to trial. Therefore, on the day of trial, Doherty approached the government about the possibility of Perez pleading guilty to the misdemeanor of misprision of a felony, the offense to which Perez's codefendant had agreed to plead guilty. The government rejected Doherty's offer, but proposed that Perez plead guilty to one felony count of receiving a kickback. During the plea negotiations, Perez never told Doherty he wanted to plead guilty for the benefit of his daughter.[1] Furthermore, Doherty denied that he had told Perez that his daughter would be arrested and prosecuted if Perez did not sign the plea agreement. Rather, while Perez debated whether to go to trial, Doherty told Perez that if Perez entered a guilty plea, Doherty believed the government would not proceed further with the mail fraud case. Doherty also told Perez that if Perez did not plead guilty, he would be "breaking into prison." Finally, Doherty testified

_____

[1]Indeed, Doherty testified that Perez considered pleading guilty for the sake of his wife and his codefendant's wife, who was ill with cancer. Doherty responded by telling Perez that he could not plead guilty for anyone else's sake and had to plead guilty for himself or go to trial.

6

that he did not know that Perez wanted to withdraw his guilty plea until Perez announced his desire to do so during the sentencing hearing.

The magistrate judge recommended that the district court deny Perez's motion to withdraw his guilty plea. In the report, the magistrate judge noted that Doherty's comments to Perez during plea negotiations about Perez "breaking into prison" and the possibility that the mail fraud case would not be pursued if Perez pled guilty "were the product of Doherty's candid assessment of a difficult client, a favorable plea offer and the potential harm that could arise from Perez's refusal to accept it." The magistrate judge observed that the comments "were not without a basis in the circumstances nor did they misrepresent any known facts." The magistrate judge concluded that Doherty's comments were not intended to improperly coerce a plea and that to render effective assistance Doherty was obligated to address the mail fraud investigation with his client.[2] The magistrate judge further concluded that Doherty's comments were only one factor considered by Perez in deciding to plead guilty and that Perez was not compelled by them to do something he was unwilling to do. Finally, the magistrate judge noted that the timing of Perez's change of heart – waiting to ask to withdraw his guilty plea until

---

[2]The magistrate judge also noted that there was no evidence that the government made any reference to Perez's daughter during the plea negotiations and that this was not a case in which the government had induced a plea through threats to prosecute a third party. Perez does not contend otherwise on appeal.

the sentencing court had ruled on Perez's objections and made the guidelines calculations – suggested an ill-conceived scheme. The district court adopted the magistrate judge's report over Perez's objection and denied Perez's motion to withdraw his guilty plea.

## D.    Second Sentencing Hearing

At Perez's second sentencing hearing, the district court determined, and the parties agreed, that the prior sentencing hearing determinations applied and that the district court would not revisit matters that already had been decided. After Perez argued in mitigation and allocuted, the district court sentenced Perez to a 21-month sentence, at the low end of the advisory guidelines range. Perez filed this appeal.

## II. DISCUSSION

## A.    Motion to Withdraw Guilty Plea

On appeal, Perez argues that the district court abused its discretion by denying his motion to withdraw his guilty plea.[3]

When a defendant decides to plead guilty, Federal Rule of Criminal Procedure 11 requires that the district court address the defendant personally in

---

[3]We "'review the denial of a request to withdraw a guilty plea for abuse of discretion.'" United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. ) (quoting United States v. Freixas, 332 F.3d 1314, 1316 (11th Cir. 2003)), cert. denied, __ U.S. __ 127 S. Ct. 457 (2006). A decision regarding a plea withdrawal request is not an abuse of discretion unless it is arbitrary or unreasonable. Id.

open court and determine whether the plea is knowing and voluntary and that a factual basis exists for the plea. Fed. R. Crim. P. 11(b). Perez does not argue that the district court did not fully comply with Rule 11's requirements during the plea colloquy. Nor does Perez argue that he received ineffective assistance of counsel during the plea negotiations or the Rule 11 hearing.

Once a guilty plea has been accepted by the district court, the defendant has no absolute right to withdraw it. United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988). Rather, after the district court has accepted a defendant's plea, but before sentencing, Rule 11 gives the district court the discretion to permit a defendant to withdraw his guilty plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In determining whether the defendant has met his burden for withdrawal, "a district court may consider the totality of the circumstances surrounding the plea," including the following factors: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Buckles, 843 F.2d at 471-72 (citation omitted).

Perez's argument on appeal focuses on the second factor, contending that his

plea was not voluntary.[4]  Specifically, Perez argues that Doherty coerced him to plead guilty to avoid potential prosecution against his daughter.

The district court did not abuse its discretion in concluding that Perez has not shown that his plea was involuntary.  First, Perez stated during his plea colloquy that his plea was not induced by any threats and was freely made.  Perez also stated that he was satisfied with his attorney's representation. "There is a strong presumption that the statements made during the [plea] colloquy are true." United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).  Consequently, a defendant "bears a heavy burden to show his statements [under oath] were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).  Perez has failed to carry this heavy burden.

Second, we agree with the district court that Doherty's comments to Perez merely expressed Doherty's professional assessment of the possible benefits of pleading guilty and were not a threat to compel Perez to plead guilty against his will.  See Buckles, 843 F.2d at 472 ("A defendant cannot complain of coercion where his attorney, employing his best professional judgment, recommends that the defendant plead guilty.").[5]  Third, the record indicates that, in the months

---

[4]On appeal, Perez does not argue that the other Buckles factors militate in his favor.

[5]To the extent Perez, his wife and his daughter testified inconsistently with Doherty (e.g., that Doherty repeatedly stated that Perez's daughter would be arrested and prosecuted if Perez did not sign the plea agreement), the district court was free to credit Doherty's version of events, and

10

before trial, although Perez knew about the mail fraud investigation and the potential charges against his daughter, Perez discussed with Doherty the possibility of striking a plea bargain and was not concerned about his daughter during those discussions. Indeed, on the morning of trial, Doherty was under instructions from Perez to negotiate a deal, and still Perez said nothing to Doherty about concern for his daughter. Finally, Perez sought to withdraw his guilty plea only after the district court had overruled Perez's objections to the recommended guidelines calculations and it was clear Perez was facing 21 to 27 months' imprisonment rather than the 10 to 16 months Perez and Doherty had anticipated.

Given that Perez's guilty plea was voluntary, the district court did not abuse its discretion in concluding that, under the totality of the circumstances, Perez had failed to show a fair and just reason for withdrawing his plea.

## B. Sentence

Perez also argues that his sentence is unreasonable, citing United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005). However, in his plea agreement, Perez waived his right to appeal his sentence on any ground except for the grounds that the sentence exceeded the applicable guidelines range or the statutory

---

we will not disturb that finding. See Buckles, 843 F.2d at 472 ("The good faith, credibility and weight of a defendant's assertions in support of a motion [to withdraw his guilty plea] are issues for the trial court to decide.").

11

maximum sentence or that the sentence violated the Eighth Amendment. Perez's

Booker claim does not fall within any of these exceptions.[6] Thus, if enforceable,

Perez's appeal waiver precludes review of Perez's Booker claim.

An appeal waiver "will be enforced if the government demonstrates either:

(1) the district court specifically questioned the defendant about the waiver during

the plea colloquy, or (2) the record clearly shows that the defendant otherwise

understood the full significance of the waiver." United States v. Grinard-Henry,

399 F.3d 1294, 1296 (11th Cir.) (quotation marks omitted), cert. denied, 544 U.S.

1041, 125 S. Ct. 2279 (2005).

The record indicates that, during the plea colloquy, the government read the

appeal waiver provision to Perez, the district court specifically questioned Perez

about the appeal waiver, and Perez and his attorney confirmed that Perez

understood its significance. Because Perez knowingly and voluntarily entered into

his appeal waiver, the appeal waiver is enforceable. Therefore, we do not address

the merits of Perez's Booker claim.

Accordingly, we affirm Perez's conviction and dismiss his appeal of his

sentence.

**AFFIRMED IN PART, DISMISSED IN PART.**

---

[6]Perez's 21-month sentence did not exceed the advisory guideline range of 21 to 27 months or the statutory maximum of five years for his offense.