[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10320
Non-Argument Calendar
_____

D.C. Docket No. 9:17-cr-80105-WPD-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DOMANO DANIEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 20, 2018)

Before WILSON, MARTIN, and HULL, Circuit Judges.

PER CURIAM:

Domano Daniel appeals his 10-year sentence for conspiring to possess five

or more kilograms of cocaine with intent to distribute.  He argues that the district

court abused its discretion by denying his motion to withdraw his guilty plea and

by giving him a substantively unreasonable sentence.  After careful consideration, we reject his arguments and affirm.

## I.

A grand jury indicted Daniel, charging him with conspiring to possess five or more kilograms of cocaine with intent to distribute and attempting to possess five or more kilograms of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846.

Daniel reached a plea agreement with the government.  The terms of that agreement required Daniel to plead guilty to conspiracy to possess five or more kilograms of cocaine with intent to distribute.  In exchange, the government would seek to dismiss the remaining charge against him and recommend a reduction in his Sentencing Guideline ("Guidelines") offense level for acceptance of responsibility.

A change of plea hearing was held in district court.  At the hearing, Daniel confirmed he and his attorney had discussed the plea agreement, the nature of the charges he faced, possible defenses to them, and his chances of winning the case at trial.  He told the court he did not need more time to discuss these or any other matters with his attorney and that he had changed his mind about wanting to go to trial.  Daniel confirmed he understood that, by pleading guilty, he would be giving up any and all defenses to the charge he faced and that he nonetheless still wanted

to plead guilty. Daniel confirmed he was pleading guilty because he was, in fact, guilty of conspiring to possess five or more kilograms of cocaine with intent to distribute. According to the government's summary of the facts, Daniel's role in the crime was limited to: engaging in phone calls with a codefendant, Reynold Simeous, about where they would pick up cocaine from a third codefendant, John Corvey; driving Simeous to that location; and opening the trunk of the car from a latch inside the car. Corvey, who was cooperating with authorities, then put a black duffel bag with sham cocaine into the backseat of the Honda, as Simeous instructed, and Simeous handed him a bag containing more than $41,000. After advising and questioning Daniel as otherwise required by Federal Rule of Criminal Procedure 11(b)(1), the district court found a factual basis for Daniel's plea. Daniel then pled guilty to the conspiracy charge. The court noted Daniel's plea was knowing, intelligent, and voluntary and accepted it.

More than two months later at what was supposed to be his sentencing hearing, Daniel told the court he believed his attorney was not representing him adequately. Daniel asserted his innocence, claiming he did not know drugs were involved in the transaction with Corvey. He said counsel coerced him into pleading guilty. In particular, Daniel pointed to counsel's refusal to allow him to review a statement counsel prepared to assist Daniel in receiving safety-valve relief

under Guidelines Section 5C1.2 until after Daniel pled guilty.  The court appointed new counsel and delayed the sentencing.

On January 12, 2018, Daniel made an oral motion to withdraw his guilty plea.  Daniel said his plea was neither knowing, nor intelligent, nor voluntary because prior counsel told him mere presence was not a defense to the charges he faced and told him to simply say yes to everything the court asked at his change of plea hearing.  The court took sworn testimony from Daniel.  Daniel testified that, although he did not knowingly participate in a drug deal, prior counsel "told [him his] mere presence and the fact that [he] asked for directions [to the location where the transaction occurred] makes [him] guilty in the conspiracy."

The court also took testimony from prior counsel, who denied Daniel's assertions.  Prior counsel testified he was initially optimistic about the possibility of a mere presence defense and discussed it with Daniel.  However, prior counsel eventually learned, through discovery provided by the government, that Daniel had previously been involved in a similar exchange and explained to Daniel that this fact might weaken a mere presence defense.

On the government's motion, the court admitted three exhibits during prior counsel's testimony, including the statement counsel submitted to the government in support of safety-valve relief, which incorporated some of Daniel's edits.  In that statement, Daniel admitted he was the driver in a similar transaction prior to the

4

transaction underlying this conviction. As to the previous transaction, Daniel admitted he "realized it must have been for drugs" when he was paid. Nonetheless, he said he participated as a driver again, leading to his arrest and conviction for the offense at issue here.

Ultimately, the court denied Daniel's motion, concluding there was no fair and just reason for Daniel's request. The court found prior counsel's testimony credible and found Daniel's testimony at the motion hearing not credible.

Sentencing took place on January 19, 2018. The district court granted the following adjustments: (1) a minor role reduction, pursuant to Guidelines Section 3B1.2; (2) a reduction based on the theory that Daniel was responsible for conspiring to distribute a smaller amount of drugs than the Presentence Investigation Report indicated, pursuant to United States v. Bacon, 598 F.3d 772, 777–78 (11th Cir. 2010) (per curiam), and Guidelines Section 2D1.1(5); (3) a two-point reduction for acceptance-of-responsibility, pursuant to Guidelines Section 3E1.1(a); and (4) relief from the applicable mandatory minimum, pursuant to Guidelines Section 5C1.2's safety valve.

As to the acceptance-of-responsibility reduction and safety-valve relief, the court noted that both were recommended in the Presentence Investigation Report, and the government had not previously objected to either. The government said the court was correct. The court expressed doubt about whether Daniel was

entitled to an acceptance-of-responsibility adjustment or safety-valve relief given its factual findings suggesting Daniel had not provided truthful testimony in connection with his motion to vacate his guilty plea. However, the court indicated it was compelled to grant both forms of relief because of the government's failure to timely object. The court ruled that Daniel's guideline range was 46 to 57 months, based on a total offense level of 23 and a criminal history category of I.

The court then pronounced sentence. To begin, the court said a guideline sentence would not be reasonable for three primary reasons. First, the court opined that 13.5 kilograms of cocaine was "a lot of cocaine being imported into the United States." Second, the court noted "[t]his isn't Mr. Daniel's first time getting involved in an importation." And third, the court expressed its belief that Daniel's conduct at the change-of-plea and motion to vacate hearings did not "promote[] respect for the law," because Daniel "told the truth during the change of plea" and later "lied trying to get out from underneath the responsibility of the case" at the hearing on the motion to vacate. In the court's view, Daniel's conduct "warranted an obstruction-of-justice enhancement [under Guidelines Section 3C1.1] had the government so requested." While noting the safety-valve requirement was "controlling on" it, the court said it still was free to "give a sentence above the ten-year mandatory minimum." Finally, the court ruled that "the equivalent of the ten-year mandatory minimum is the appropriate sentence" "given all the facts and

6

circumstances of this case, to promote respect for the law, to act as a deterrent so other people aren't tempted to assist in smuggling . . . large amounts of drugs from the Bahamas, and to indicate that the Court doesn't condone perjury in a[n] obstruction of justice fashion." The court imposed a ten-year sentence.

Daniel objected on substantive reasonableness and due process grounds, given that the court's sentence more than doubled the top of the guidelines. The court overruled his objection. In so doing, the court said it could consider Daniel's purported perjury even though the government had not requested an obstruction-of-justice enhancement. It described Daniel's behavior as "willy-nilly lying and wasting the Court's time with perjurious testimony." The court added that it could also consider its views on Daniel's acceptance of responsibility and the application of the safety valve to Daniel's case in setting a fair and just sentence.

This appeal followed.

## II.

Daniel raises two claims on appeal. First, he asserts the district court abused its discretion in denying his motion to withdraw his guilty plea because the plea colloquy did not dispel or address his mistaken belief that there was no available legal defense. Second, he argues that his sentence was substantively unreasonable because the district court gave improper weight to his purported perjury.

We review the denial of a request to withdraw a guilty plea for abuse of discretion. United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006). We also review the substantive reasonableness of a sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).

## III.

We begin with Daniel's claim that the district court should have granted his motion to withdraw his guilty plea. Daniel argues that the district court's colloquy was deficient, because the court "never asked [him] if he had an opportunity to review the defense of mere presence with counsel." That was a critical question here, Daniel asserts, because he harbored an "incorrect belief that he had no defense." As a result, Daniel says his plea was not knowing or voluntary and, therefore, the district court should have permitted him to withdraw it.

In rejecting this argument, we note that the district court found Daniel's testimony not credible, including his assertion that his counsel had not discussed the availability and viability of a mere presence defense. Rather, the district court credited the testimony of Daniel's prior counsel, who said that he discussed the mere presence defense with Daniel. These credibility determinations were matters for the district court to decide, and Daniel has not indicated why we should revisit them. Brehm, 442 F.3d at 1298 ("The good faith, credibility and weight of a defendant's assertions in support of a motion to withdraw a guilty plea are issues

8

for the trial court to decide." (quotation marks omitted and alteration adopted)).

The only evidence in the record supporting Daniel's claim was his own testimony.

Once the district court discredited it, Daniel could not meet his burden to show a

"fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B);

Brehm, 442 F.3d at 1298. Therefore, the district court did not abuse its discretion

in denying Daniel's motion to withdraw his guilty plea.

## IV.

We next review Daniel's claim that his sentence was substantively

unreasonable. Daniel's argument proceeds in two parts. First, he asserts that the

district court erred by considering his alleged perjury in deciding to vary upward

from the guidelines because a feature of the sentencing scheme—the obstruction-

of-justice enhancement—already accounts for this conduct. Second, he argues his

sentence "was more than doubled because he did not fully understand his plea

colloquy at the time," and that, in any event, neither his alleged perjury nor the

other circumstances of the case justified the district court's major variance.

Daniel's first argument fails because the government did not request and the

district court did not impose an obstruction-of-justice enhancement. Thus, the

district court's belief that Daniel had perjured himself was not accounted for in

calculating the guideline range. Cf. United States v. Valdes, 500 F.3d 1291, 1292

n.2 (11th Cir. 2007) (per curiam) (deeming a sentence substantively unreasonable

in part because "[m]any of the bases for the district court's sentence were already accounted for in calculating the Guidelines range").

Daniel's second argument also falls short. No doubt, Daniel's 10-year sentence, more than double the top of the guideline range, represents a major variance. See United States v. Irey, 612 F.3d 1160, 1196 (11th Cir. 2010) (en banc) (concluding a 42% variance qualified as major). Such variances "require . . . more significant justification than . . . minor one[s]." Id.; United States v. Pugh, 515 F.3d 1179, 1201 (11th Cir. 2008) (concluding that a "district court did not support [its] major departure with a significant justification" (quotations omitted)). Nonetheless, we cannot conclude that the district court abused its discretion in imposing this upward variance. Irey, 612 F.3d at 1187, 1189.

Increasing Daniel's sentence because he did not understand his plea would certainly be an abuse of discretion. See id. at 1189 (explaining that a district court abuses its discretion when it "gives significant weight to an improper or irrelevant factor" (quotation marks omitted)). But that is not what happened here. Instead, the district court justified its variance in part by Daniel's purported dishonesty under oath at the hearing on his motion to withdraw his guilty plea. This Court's precedent has permitted a district court to do just that in materially indistinguishable circumstances. See United States v. Mateos, 623 F.3d 1350, 1367 (11th Cir. 2010) (O'Connor, J., ret.) (affirming a sentence on a substantive

10

reasonableness challenge, where the district court found, at sentencing, that the defendant had "blatantly lied" during her testimony at trial and referred to her "perjurious testimony" as one of several reasons for varying upward  (quotation marks omitted)).  Thus, we cannot say the district court abused its discretion by considering Daniel's perjury in varying upward.

Also, the district court did not rely on Daniel's perjury alone to justify such a major variance.  The court also said it varied upward in part "to . . . deter[] other people . . . from . . . assist[ing] in smuggling . . . large amounts of drugs from the Bahamas."  We cannot say—and Daniel does not argue—that this was error.  See 18 U.S.C. § 3553(a)(2)(A), (B) (providing that the district court must consider "the need for the sentence imposed . . . to reflect the seriousness of the offense [and] . . . to afford adequate deterrence to criminal conduct").

Even if we ourselves would have imposed a less severe sentence, this is not a basis to conclude that Daniel's sentence was substantively unreasonable.  Gall, 552 U.S. at 51, 128 S. Ct. at 597 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").  Therefore, we cannot say the district court's sentence "constitute[d] a clear error of judgment."  Irey, 612 F.3d at 1187, 1189 (quotation marks omitted).  We affirm.

**AFFIRMED.**

11