[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12948

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CLEMMIE LEE SPENCER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:20-cr-00034-LSC-JHE-1

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and BRANCH, Circuit Judges.

PER CURIAM:

Clemmie Spencer appeals his convictions following his pleas of guilty to possessing with intent to distribute cocaine base and marijuana, 21 U.S.C. §§ 841(a), 841(b)(1)(B), 841(b)(1)(D); possessing a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of a firearm, *id.* 922(g)(1). He challenges the denials of his motions to suppress and to withdraw his guilty pleas. We affirm.

On August 13, 2019, Officer Josh Senkbeil obtained a warrant to search the house of Spencer's girlfriend, Quinise Watkins, and execute a bond revocation warrant for Spencer's person. Two days later, officers arrested Spencer at Watkins's house.

About an hour after Spencer's arrest, Officer Senkbeil applied for a second warrant to "search the [] property for [Spencer]." Officer Senkbeil attested that, while arresting Spencer in one of the bedrooms and conducting a protective sweep of the house, an officer saw marijuana on the bedroom dresser in plain view. Another officer saw cocaine on the kitchen table, next to a power bill in Spencer's name, and a firearm on top of the refrigerator in plain view. A state magistrate issued the second search warrant to search the house for evidence of "illegal narcotics distribution and trafficking."

After a federal grand jury indicted Spencer for possessing with intent to distribute cocaine base and marijuana, 21 U.S.C. §§ 841(a), 841(b)(1)(B), 841(b)(1)(D); possessing a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of a firearm, *id.* 922(g)(1), Spencer moved to suppress the evidence seized from the house. He argued that, when officers executed a warrant to search the house for him, the officers then searched the house for evidence without a warrant to do so, and they exceeded the scope of a lawful protective sweep. At a hearing on the motion to suppress, the magistrate judge stated that he was "curious about what it is the defendant is challenging. . . . Are you challenging the search warrant that was secured subsequent to what the government alleges was a protective sweep?" Spencer answered that, apart from being unable to ascertain the authenticity of signatures on the second search warrant, "No, Your Honor." Spencer also referred to the second search warrant as "properly obtained."

The magistrate judge issued a report and recommendation that Spencer's motion to suppress be denied. The magistrate judge found that, regardless of Spencer's standing to challenge the search, the officers conducted their protective sweep within two minutes while arresting Spencer, and the magistrate judge found that the evidence was in plain view.

Spencer objected to the report and recommendation. He argued that most of the items were not in plain view and that there was no reason to conduct a protective sweep when the officers

quickly found Spencer in the house and Spencer told them that no one else was in the house. The district court overruled Spencer's objections and adopted the report and recommendation.

At trial, after the government presented its first witness, Spencer announced during a recess that he was "going to take a blind plea today." The district court asked if he would like to wait, but Spencer said that he "would just rather get on out of []here and just take a blind plea." The district court explained that it could not allow Spencer to plead guilty if he was being coerced, and Spencer replied, "It ain't that . . . I am just ready to get it over with." The district court asked Spencer whether he was guilty, and Spencer said he was not. After the district court stated it did not "take guilty pleas from people that say they aren't guilty," Spencer repeated three times that he was guilty. Spencer's trial counsel, Henry Penick, stated that he approved of Spencer entering a guilty plea.

The district court emphasized that Spencer should not "plead guilty because of anything other than the fact that [he was] guilty and [he] want[ed] to take whatever advantage [he] might get by pleading guilty." Spencer stated that they could "keep trying" the case and mentioned that he was concerned that his conversations with Penick were being recorded by the jail. The district court stated that it would ensure that Spencer and his counsel got to spend some "quality time together" in an interview room at the courthouse at the end of the day. The district court also instructed Penick to "talk some" with Spencer during the next recess. The government presented three more witnesses that day.

On the second day of trial, the government presented four witnesses before Spencer informed the district court that he wanted to plead guilty because he saw that he was not "going to win here." He stated that no one had threatened him or did anything to make him enter a plea and that he was "signing the papers" because he was "done with this case." The district court cautioned:

> The government has you charged with the drug charge having had a serious drug offense conviction within the past . . . . The minimum you could get for that would be ten years. And then pleading guilty to having a firearm in furtherance of that drug trafficking crime, you would . . . be facing at a minimum 15 years in prison. . . . Most folks in your shoes would not say I want to plead guilty. . . . Before I would accept a guilty plea, I would have to be convinced you are doing it because you really are guilty and you understand that and you want to get on with it and plead guilty because you are guilty.

Spencer stated that he still wanted to plead guilty.

The district court began the plea colloquy, but Spencer interrupted that he wanted to "reserve [his] rights." The district court explained that, because there was no plea agreement, Spencer retained his right to appeal the rulings of the district court and his sentence. The district court confirmed that Spencer understood that he was facing a minimum sentence of 15 years of imprisonment. The district court also confirmed that Spencer understood his right to continue with the trial and to have a

constitutionally-adequate attorney. The district court explained that, if he pleaded guilty, "there is not going to be any more trial." It explained, "It's not like you are going to plead guilty, me send the jury home, and all of a sudden you change your mind. If you plead guilty and I accept it, then that's the end of it. You won't have a trial."

Spencer confirmed he understood, no one had threatened or coerced him to plead guilty, and he was pleading guilty because he was guilty. Penick stated he knew of no reason why the district court should not accept Spencer's plea. Spencer pleaded guilty to all charges. The district court found that Spencer entered his pleas knowingly and voluntarily and accepted his guilty pleas.

Three months later, Spencer, through counsel, moved to withdraw his guilty pleas based on insufficient evidence linking the items seized at Watkins's house to him. He also filed a *pro se* motion alleging ineffective assistance of counsel because Penick, who was Spencer's fifth attorney, failed to file various motions in limine and was unprepared for trial. After Penick moved to withdraw as counsel, Spencer filed three *pro se* motions to withdraw his guilty plea: the first motion asserted that he had sued the officers; the second asserted that Penick was ineffective and that Spencer was coerced into pleading guilty; and the third asserted that his pleas were not knowing or voluntary because he was mentally ill and could not understand the nature of the charges and that the jail administrators pressured him to plead guilty by denying him the opportunity to meet with Penick.

The district court granted Penick's motion to withdraw, and it appointed new counsel. The district court also granted Spencer's counseled motion for a competency hearing.

At sentencing, the district court considered the forensic report regarding Spencer's competency evaluation and ruled that he was fully competent. Spencer argued that Penick told him to plead guilty and to then withdraw his pleas to "reset the clock." He testified that he could not recall being advised of the range of punishment, but when presented with the transcript where he confirmed that he understood the range, he stated that he was incompetent and had listened to Penick. Penick testified that he never told Spencer he would be able to withdraw his guilty pleas and that he believed Spencer "knew what he was doing" by pleading guilty.

The district court denied Spencer's motions to withdraw his guilty pleas. The district court explained that it was clear that Spencer "knew exactly what he was doing," understood his rights, and was angry that his trial was not going the way he wanted it to go. The district court read an excerpt from the transcript from the first day of trial when Spencer announced that he wanted to plead guilty because he was guilty. The district court ruled that Spencer knowingly and voluntarily pleaded guilty:

> [Spencer] is just a manipulator is what he is. And he has gone through his life manipulating others around him. And he seems to think he can get his way, whatever he does. . . .

> I have tried to be fair and I'll continue trying to be fair to him. But he understood what he was doing. It was a knowing and voluntary act, him pleading guilty. He understood his rights. He understood his range of punishment. He elected to plead guilty. I actually advised him not to plead guilty. And he still pled guilty.

The district court then sentenced Spencer to 25 years of imprisonment followed by 15 years of supervised release.

Two standards of review govern this appeal. In reviewing the denial of a motion to suppress, we review findings of fact for clear error and the application of law to those facts *de novo*. *United States v. Barsoum*, 763 F.3d 1321, 1328 (11th Cir. 2014). We review the denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). We will not reverse unless that decision is "arbitrary and unreasonable." *Id.* A defendant may withdraw his pleas of guilty before sentencing if he can "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "In determining whether the defendant has met this burden, the district court may consider the totality of the circumstances surrounding the plea." *United States v. Buckles*, 843 F.2d 469, 471–72 (11th Cir. 1988).

Spencer argues, for the first time on appeal, that the district court erred in denying his motion to suppress because the second search warrant exceeded what Officer Senkbeil requested in his application for it, which was to "search the [] property for [Spencer]." Spencer argues that the state magistrate corrected the

misstatement by authorizing officers to search for evidence of "illegal narcotics distribution and trafficking" based on the contents of Officer Senkbeil's affidavit.

The doctrine of invited error bars Spencer's challenge to the validity of the second search warrant. *See United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) ("[A] party may not challenge as error a ruling or other trial proceeding invited by that party."). The magistrate judge squarely asked Spencer if he was challenging "the search warrant that was secured subsequent to what the government alleges was a protective sweep." Spencer said he was not and described the second search warrant as "properly obtained." Because Spencer induced the district court into making what he now contends is an error, we do not reach the merits of his argument. *Id.* But even if he did not invite the purported error, Spencer still waived his right to challenge the ruling by failing to object to the magistrate judge's report and recommendation, which expressly stated that Spencer was not challenging the validity of the second search warrant except to the extent that it was derivative of the protective sweep. *See* Fed. R. Crim. P. 59(b) ("Fail[ing] to object . . . waives a party's right to review."); *United States v. Holt*, 777 F.3d 1234, 1257–58 (11th Cir. 2015).

Spencer argues that the district court erred in denying his motions to withdraw his guilty pleas. He contends that, because he was relying on Penick's statement that he would be allowed to withdraw his guilty pleas, he should have been allowed to do so. We disagree.

The district court did not err. Penick testified, and the district court found credible, that he never advised Spencer to enter pleas of guilty and withdraw them later. The determinations of whether to credit that testimony and what weight to give it rested with the district court. *Buckles*, 843 F.2d at 472.

Spencer also argues that he was unable to discuss his decision to plead guilty with Penick before the colloquy, but the record reveals several instances in which the district court ensured that time was available for Spencer to discuss with Penick whether to plead guilty, including during a recess on the first day of trial and in an interview room after adjourning that day. During his plea colloquy, Spencer also confirmed that he had discussed his plea agreement with Penick and with several of his previous attorneys. After these opportunities to confer with counsel and after the government presented eight witnesses, Spencer persisted with his guilty plea. He raises no argument in his opening brief that his decision was not knowing and voluntary. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc). Spencer failed to establish a "fair and just reason" for withdrawing his plea. Fed. R. Crim. P. 11(b)(2)(B).

We **AFFIRM** Spencer's convictions and sentence.