[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13904
Non-Argument Calendar

_____

D.C. Docket No. 9:18-cr-80228-RLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY JARRED PAIGE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 11, 2020)

Before MARTIN, ROSENBAUM and LUCK, Circuit Judges.

PER CURIAM:

Timothy Paige pleaded guilty to possessing marijuana and oxycodone with the intent to distribute them, possessing a firearm in furtherance of a drug-trafficking crime, and possessing a firearm and ammunition after being convicted of a felony. Paige argues on appeal that (1) he did not waive his appellate rights knowingly and voluntarily; and (2) the district court abused its discretion by denying his motion to withdraw his guilty plea. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Paige pleaded guilty, with a written plea agreement, to one count of possession with intent to distribute marijuana and oxycodone, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm and ammunition by a convicted felon. Paige agreed to "waive[] all rights . . . to appeal any sentence imposed" unless the sentence exceeded the statutory maximum, the district court imposed an upward departure or variance, or the government appealed.

At the start of his plea hearing, Paige was reluctant to go through with pleading guilty. The district court told Paige he had three options: he could plead guilty; the court could schedule a trial date; or he could talk some more with his attorney. Paige chose to speak with his attorney, and the district court reset the hearing for later in the day. After the recess, Paige said he was ready to plead guilty but that he was dissatisfied with his attorney. The district court then referred Paige and his attorney to a magistrate judge for an inquiry into the representation.

2

Paige told the magistrate judge that his lawyer was good at what he did and that he could not speak badly about his lawyer's performance but that he was dissatisfied he had not received positive results in his case. Paige agreed that his attorney had discussed the government's witnesses and evidence with him and had also conducted discovery on his behalf. Paige's attorney had discussed multiple defenses with him, investigated potential defense witnesses, talked through strategies, and answered his questions. Paige's attorney responded to any issues Paige raised and had filed a motion to suppress on Paige's behalf. The magistrate judge gave Paige and his counsel some time to discuss the plea between themselves. Paige then told the magistrate judge that he was ready to plead guilty and would do so in front of the district judge.

Back before the district court for the third time that day, Paige said he had enough time to think about the plea agreement and discuss it with his attorney. He told the court that he had read the agreement and discussed it with his attorney before he signed it. He said he understood all its terms. At the court's direction, the government explained the terms to Paige, including one of the "most significant provisions" of the agreement: the sentence-appeal waiver.

Paige told the court that he did not understand the government's explanation of the appeal waiver, so the district court broke it down for him. The court said Paige had a right to appeal his sentence under certain statutes, but, because of his

3

negotiations with the government, he was giving up the right to appeal the sentence the district court imposed. The court also explained the exceptions to the waiver, including the government's ability to appeal the sentence. Paige himself gave a summary: "So, if I waive my rights, [the government] still ha[s] theirs?" The court agreed but added that if the government appealed the sentence, so could Paige. The district court went on to give Paige examples in which the waiver would and would not apply. Paige said he understood everything the court described and did not have any other questions about the waiver. He testified that no one had forced him to agree to the waiver and that he agreed to the waiver knowingly and voluntarily and fully understood its terms.

The government also explained the other "significant provision[]" of the plea agreement—that Paige and the government agreed to recommend that the district court vary downward to a twenty-year sentence if Paige qualified as a career offender. Paige asked the district court about this provision. The court explained that the plea agreement called for Paige and the government jointly to recommend a twenty-year sentence but that the district court was not bound by that recommendation.

Further, the district court identified the charges Paige would plead to and the rights he was giving up. The court also went over the maximum sentence. In response to the court's questions, Paige said he was not coerced to enter the plea.

4

Although Paige expressed some hesitancy given the potential sentence he faced, he ultimately waived his right to trial and pleaded guilty. The district court accepted Paige's plea.

Two months later, Paige filed a pro se motion to withdraw his guilty plea and a month after that filed a counseled motion (with new counsel) to withdraw or vacate his guilty plea. The district court denied the pro se motion and adopted the magistrate judge's report and recommendation to deny the counseled motion. The district court applied the four Buckles factors. See United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988). For the first factor, the court found that Paige had the close assistance of counsel who discussed the case with him, advised him of his options, and filed a motion to suppress. For the second factor, the district court found that Paige knowingly and voluntarily entered into the plea agreement and its sentence-appeal waiver given the extensive plea colloquy, Paige's informed questions about the plea agreement and waiver, and the district court's responses to those questions. The third factor also weighed against Paige because he moved to vacate his plea only after the probation office issued its presentence investigation report and two addenda, in an apparent attempt to avoid a potentially unfavorable sentence. Fourth, the district court found that allowing Paige to withdraw his plea would not prejudice the government. After denying the motion to withdraw, the

district court sentenced Paige below the joint recommendation to 191 months' imprisonment.

## STANDARD OF REVIEW

We review the validity of a sentence-appeal waiver de novo. United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008). And we review the denial of a motion to withdraw a guilty plea for abuse of discretion. United States v. Brehm, 442 F.3d 1291, 1298 (11th Cir. 2006).

## DISCUSSION

We assume, without deciding, that the appeal waiver is invalid, so we don't reach that issue. As to the motion to withdraw his guilty plea, Paige argues that the district court abused its discretion by denying the motion.

After the district court accepts a plea, but before sentencing, the defendant may withdraw a guilty plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). A defendant has no absolute right to withdraw a guilty plea prior to imposition of a sentence. Buckles, 843 F.2d at 471.

To determine whether a defendant has shown a "fair and just reason" for withdrawing his guilty plea, the district court should "consider the totality of the circumstances surrounding the plea." Id. at 471–72. In doing so, the district court should weigh the following four factors: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial

6

resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Id. at 472 (citation omitted). If the defendant cannot satisfy the first two factors, we have said that the district court need not give "considerable weight" or "particular attention" to the remaining factors. United States v. Gonzalez-Mercado, 808 F.2d 796, 801 (11th Cir. 1987). There is a strong presumption that statements made during a plea colloquy are true. Id. at 800 n.8.

Here, the district court did not abuse its discretion under the Buckles factors. First, as the district court found, Paige had the close assistance of counsel. Paige said that he had discussed the plea with his attorney. Paige told the court that his lawyer had discussed the government's evidence with him, conducted discovery, and explored defenses. Paige's counsel responded to his questions and had even filed a motion to suppress. Paige, multiple times, said that he was satisfied with his lawyer. Still, the district court gave Paige additional time to consult with his attorney before accepting the plea.

Second, the extensive plea colloquy made clear that Paige pleaded guilty knowingly and voluntarily. The district court discussed the terms of the plea agreement, the charges against Paige, the rights he would waive, and the potential consequences of his plea. Paige repeatedly told the district court that he wanted to plead guilty and that no one had forced him to enter the plea. The district court

7

stressed that Paige was the only one who could decide whether to plead guilty or not. Paige also informed the district court several times that he understood all of the terms of the plea agreement. Where Paige did not understand something in the agreement, he asked informed questions, including about the appeal waiver, the career offender determination, and the counts he would be pleading to. The district court gave thorough answers, provided examples of when the appeal waiver would apply and how the career offender determination would be made, and made sure that it addressed all of the points Paige raised.

Paige argues that his counsel inaccurately stated before the magistrate judge that, despite the parties' agreement to recommend a twenty-year sentence, he could argue for a further downward variance at sentencing. But Paige does not argue that his attorney's representation affected his decision to plead guilty. See United States v. Pease, 240 F.3d 938, 941 (11th Cir. 2001) (holding that to succeed on a motion to withdraw a plea based on ineffective assistance of counsel, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985))). And any error was cured when the government and district court explained that the joint recommendation of the twenty-year sentence was a binding part of the agreement. See id. (affirming denial of a motion to withdraw plea, despite the defendant's argument that his counsel gave him

8

erroneous advice concerning his sentence, because "it [was] clear from the transcript of the plea hearing" that the magistrate judge warned the defendant that he could not rely on counsel's prediction of a sentence; that the crime had a different mandatory minimum than what counsel had told the defendant; and that the court could deviate from any sentence estimate given to the defendant).  Paige was told by the district court that he and the government would jointly recommend a twenty-year sentence, and Paige said he understood and still wanted to plead guilty.

Because the first two Buckles factors weigh so heavily against Paige, we do not give "particular attention" to the remaining factors.  Gonzalez-Mercado, 808 F.2d at 801.  The district court did not abuse its discretion in denying Paige's request to withdraw his plea, so we affirm.

**AFFIRMED.**

9