[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11822
Non-Argument Calendar

_____

D.C. Docket No. 3:16-cr-00054-MCR-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

NICHOLAS G. PEACOCK,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 11, 2021)

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

PER CURIAM:

Nicholas Peacock, a *pro se* federal prisoner, appeals following his conviction on a guilty plea to two felony counts—enticing a minor to engage in sexual activity, and travelling for illicit sexual activity with a person under the age of 16.  On appeal, he appears to argue that his guilty plea was involuntarily and unknowingly made.  The government responds that Peacock has abandoned this point on appeal and—assuming *arguendo* that he did not abandon it—that any arguments that the plea was involuntary or that the District Court abused its discretion in denying Peacock's motions to withdraw the plea are meritless.  While we disagree that Peacock has abandoned these arguments, we nevertheless conclude that Peacock's plea was voluntarily and knowingly made.  Likewise, we find no abuse of discretion in the District Court's denials of Peacock's motions to withdraw his plea.  We accordingly affirm.

## I.

On June 21, 2016, a federal grand jury for the Northern District of Florida indicted Peacock for enticing a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 1), and travelling for illicit sexual activity with a person under the age of 16, in violation of 18 U.S.C. § 2423(b) (Count 2). Following his initial appearance, Peacock was appointed counsel, and in October 2016, Peacock's attorney moved the District Court to hold a hearing to determine whether Peacock was competent to stand trial.  In a pretrial evaluation report, a

psychologist hired by defense counsel determined that Peacock was incompetent to stand trial due to psychosis and paranoid delusions. But a court-appointed psychologist disagreed in light of Peacock's "thorough understanding of legal concepts" and his "ability to apply this knowledge to the facts of his own case." Relying on the court-appointed psychologist, the District Court found Peacock competent.

In June 2017, Peacock's attorney requested a *Faretta*[1] hearing after Peacock indicated that he wished to represent himself, and in July 2017, the attorney again moved for a mental evaluation, as Peacock had been placed on suicide watch in jail. Then, interestingly, the same psychologist defense counsel previously hired— who had found Peacock incompetent—conducted another mental evaluation, changed her opinion, and found him competent.

The *Faretta* and competency hearings were held conjunctively. The District Court first found that Peacock was competent to stand trial based on the three psychological reports that were submitted, stating that Peacock's contemplations of suicide did not amount to an incapacity to appreciate the reality of his situation.

---

[1] Before a court allows a criminal defendant to proceed *pro se*, the defendant must clearly and unequivocally assert his right of self-representation. *See Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1975). A *Faretta* hearing is thus conducted when a criminal defendant wishes to represent himself and waive court appointed counsel.

The District Court then denied Peacock leave to proceed *pro se* because his waiver of counsel was not unequivocal.

So, in July 2017, Peacock pled guilty to both counts in the indictment pursuant to a written plea agreement. Importantly, the plea agreement itself stated that Peacock was pleading guilty because he was "in fact guilty of the charges alleged." The agreement likewise noted that Peacock was pleading guilty voluntarily, knowingly, and with the advice of counsel.

At the Federal Rule of Criminal Procedure 11 plea hearing, the District Court placed Peacock under oath and informed him that, should he not tell the truth during his plea colloquy, he could be subjected to a perjury charge. The Court confirmed that Peacock graduated from high school and even attended some college courses. Peacock then stated that he had enlisted in the Navy for a short period of time, and after his discharge, held a few other jobs. He denied being on any medications that would impair his capacity to think clearly.

As the hearing continued, the District Court confirmed that Peacock signed the plea agreement with the assistance of counsel. It explained to Peacock the charges he faced, listing both the elements and possible penalties for each charge; Peacock confirmed that he understood the elements and penalties. The District Court next ensured that Peacock understood that, by pleading guilty, he waived his right to trial and other constitutional trial rights. Then, the Court confirmed that

Peacock and his attorney spoke about the plea agreement and the rights he would be giving up as a result.

With that taken care of, the District Court next asked Peacock to confirm the factual basis for his plea. At this point, Peacock began to push back. The government and the District Court then agreed that if Peacock continued to fight the factual basis for his plea, Peacock would need to proceed to trial. Peacock's attorney attempted to explain why Peacock was pushing back against the facts, but the District Court stated that it did not want to take Peacock's plea if Peacock himself would not admit to the factual basis and thus fully comprehend the plea. Peacock subsequently admitted to driving from North Carolina to Florida to meet a twelve-year-old girl that he wanted to have sex with. So, the District Court again asked Peacock if the factual basis for the plea documents was true, and Peacock finally conceded that it was.

The District Court—wanting to ensure that Peacock was pleading guilty "knowingly and intelligently"—next asked Peacock if anyone (including his attorney) pressured, threatened, or coerced him to plead guilty. Peacock said that no one had. The District Court further inquired whether Peacock had any issues with his attorney that he wanted to bring to the Court's attention. Again, Peacock stated that he did not. So, the District Court then informed Peacock that if it accepted his guilty plea, he would not be able to withdraw the plea "except for

under very extraordinary circumstances." The Court also stated that Peacock was "alert and intelligent such that [he understood] the nature of the charges," and that he made the plea "voluntarily of [his] own free will without any threats or pressure or coercion from anyone else[.]" And, ultimately, the District Court accepted Peacock's guilty plea.

But in August 2017, Peacock—proceeding *pro se*—filed a second request for a *Faretta* hearing and moved to withdraw his guilty plea. He claimed that he had "lied to [the District Court]" and stated that his attorney manipulated, intimidated, scared, and coerced him into pleading guilty against his will. Peacock likewise contended that his attorney did not give him discovery or inform him of any of his rights, so he felt he had "no choice" but to plead guilty. The government opposed Peacock's motion to withdraw the guilty plea because it believed Peacock could not show a "fair and just" reason for the withdrawal.

Peacock's attorney requested to withdraw from the case in response to Peacock's *Faretta* request. He claimed that irreconcilable differences existed between he and Peacock, but he contended that he gave Peacock all discovery and discussed all of the options Peacock had regarding trial and his guilty plea. The magistrate judge held a hearing on the issue and permitted Peacock to represent himself. The magistrate did, however, appoint a new attorney to be Peacock's standby counsel.

The District Court then denied Peacock's motion to withdraw his guilty plea. The Court noted that Peacock had explicitly acknowledged at his plea hearing that he waived his right to a trial and his defenses. Likewise, Peacock had acknowledged and admitted the factual basis for his plea, which he conceded was not threatened, pressured, or coerced. Peacock had been represented by competent counsel and, in the District Court's eyes, was alert and engaged during the plea hearing, so the Court found that Peacock had not demonstrated a "fair and just reason" for withdrawing his guilty plea.

Apparently undissuaded, Peacock then moved to withdraw his plea a second time. This second motion mostly mirrored the first, but Peacock also pointed out that he had been on suicide watch the day before his plea hearing. Peacock argued that he was giving hand signals during the plea hearing to indicate that he was in distress, presumably because of his mental state. These "extraordinary circumstances," Peacock claimed, required that the guilty plea be withdrawn. The District Court disagreed and—"for the reasons stated in the Court's prior Order"— denied the motion.

At sentencing, Peacock (still proceeding *pro se*) claimed that he was only trying to help remove his victim from her rough home life, that he loved her, and that he did not "think [he] did anything horribly wrong." The government responded that Peacock's refusal to accept responsibility for his crimes merited a

7

harsh sentence.  The District Court ultimately sentenced Peacock to serve a total of 328 months' imprisonment—the midpoint of his guideline range—for each count, set to run concurrently, followed by a life term of supervised release.  It noted that Peacock was "extremely bright," but, based on past psychological testing, was "disturbed."  In particular, the Court found that he "preyed" on his victim, "groomed her," and "victimized her" in a way that would damage her for the rest of her life.

In the days following the sentencing hearing—but before the District Court entered a final judgment—Peacock filed a self-styled motion to dismiss his charges, along with a self-styled motion for reconsideration of his motion to withdraw his guilty plea.  The District Court denied both motions and then entered a final judgment in April 2018.  Peacock timely appealed and now appears to argue that his guilty plea was involuntarily and unknowingly made.  While we disagree with the government's contention that this argument was abandoned, we nevertheless affirm the District Court because Peacock's plea was made knowingly and voluntarily, and the Court did not abuse its discretion in denying Peacock's motions to withdraw his guilty plea.

## II.

As an initial matter, we construe *pro se* pleadings liberally.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).  But issues not briefed by a *pro se*

litigant are deemed abandoned. *Id.* Thus, "a party seeking to raise a claim or issue on appeal must plainly and prominently" do so. *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

When appropriate, we will review the voluntariness of a guilty plea *de novo*. *United States v. Frye*, 402 F.3d 1123, 1126 (11th Cir. 2005). But we review a District Court's denial of a motion to withdraw a guilty plea only for abuse of discretion. *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988).

## III.

Peacock's opening brief appears to argue that he was "intimidated and coerced" into pleading guilty. To this, the government responds that Peacock's brief "contains no legal argument explaining why he believes his convictions are invalid," and thus he has abandoned "any and all challenges to his conviction and sentence." But even if he has not abandoned his challenges, the government contends that Peacock's plea was voluntary, and it was not an abuse of discretion to deny his motions to withdraw his plea. We'll address each of these arguments in turn.

## A.

We'll start with the abandonment issue, since it can be disposed of quickly.

Though Peacock's *pro se* brief is not a model of clarity, it is entitled to liberal construction. *Timson*, 518 F.3d at 874. On a few occasions in his brief,

Peacock states that he "signed papers that were not true," that he "did not want to sign," and that were signed out of "fear and ignorance." Peacock likewise claims that because he was "intimidated and coerced," he signed the papers "unwillingly and unknowingly." Read charitably, we can discern that Peacock is raising a challenge to the voluntariness of his guilty plea—the "papers"—because he was "intimidated and coerced." Though the government would have us read Peacock's brief to abandon all challenges to his plea, it nevertheless recognizes that the brief "appears to suggest that his guilty plea was involuntary." We decline—as we must—to read Peacock's brief narrowly, and we thus conclude that Peacock did not abandon his challenge to the guilty plea on appeal. *See id.* at 874.

## B.

Next, we turn to whether Peacock's plea was knowing and voluntary.

Because a plea of guilty is a waiver of several constitutional rights, the Due Process Clause of the Fourteenth Amendment requires the plea to be entered voluntarily and knowingly. *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969). Rule 11 of the Federal Rules of Criminal Procedure creates a prophylactic scheme designed to ensure both that guilty pleas are constitutionally made and that a full record will be available in the event that a challenge is made to the plea. *Id.* at 465, 89 S. Ct. 1170. To determine whether the waiver is knowing and voluntary, a court accepting a plea of guilty must

10

comply with the three "core objectives" of Rule 11 by ensuring that: (1) the guilty plea is free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant understands the direct consequences of his plea. *United States v. Presendieu*, 880 F.3d 1228, 1238 (11th Cir. 2018).

Regarding the first core principle, Rule 11(b)(2) elaborates that the court must ensure that the plea did not result from force, threats, or promises not included in the plea agreement. Fed. R. Crim. P. 11(b)(2). A defendant cannot complain of coercion where his attorney, in his best professional judgment, recommends that the defendant enter a guilty plea. *Buckles*, 843 F.2d at 472. Whether the court has complied with the second core principle depends on a variety of factors, including the complexity of the offense and the defendant's intelligence and education. *Presendieu*, 880 F.3d at 1238. And to comply with the third core principle, the district court must inform the defendant of the rights that he gives up by pleading guilty, the court's authority to impose certain punishments, and the possibility of a perjury prosecution for false statements made during the plea colloquy. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005); *see also* Fed. R. Crim. P. 11(b)(1). Thus, a plea is knowing and voluntary when it is free from coercion, the defendant understands the nature of the charges against him, and the defendant knows and understands the consequences of the guilty plea. *Frye*, 402 F.3d at 1127.

11

Here, Peacock has not shown that his guilty plea was unknowingly or involuntarily made. As we outlined in part I, the District Court went to great lengths at Peacock's Rule 11 hearing to address each of the Rule's "core objectives." The Court questioned Peacock regarding any coercion or force placed upon him to plead guilty. Peacock—under oath—affirmed that he was not subject to any force, coercion, or threats to entice him to plead guilty. The District Court also questioned Peacock regarding his understanding of the nature of his charges. The Court went into great detail regarding the elements and what needed to be proven, and Peacock—a high-school- and college-educated man— affirmed that he understood the charges against him. And finally, the District Court questioned Peacock regarding his understanding of the constitutional rights he was waiving in order to plead guilty, its authority to impose certain punishments, and the implications of making a false confession. Once again, Peacock confirmed that he understood. These affirmative statements, made under oath, are presumptively truthful, *see United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994), and Peacock has not met his heavy burden to show that his statements were false, *see United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

So, when taking Rule 11's concerns into consideration, Peacock's plea was knowingly and voluntarily made. It follows that the District Court did not err in accepting Peacock's guilty plea.

C.

And finally, we consider whether the District Court abused its discretion in denying Peacock's motions to withdraw his guilty plea.

Where the core concerns of Rule 11 are not satisfied, the proper remedy is for the district court to allow the defendant to withdraw his plea of guilty. *United States v. Jones*, 143 F.3d 1417, 1419 (11th Cir. 1998). A district court may grant a motion to withdraw a guilty plea if the defendant shows a "fair and just reason," but there is no "absolute right to withdraw a guilty plea." *Buckles*, 843 F.2d at 471; *see also* Fed. R. Crim. P. 11(d)(2)(B) (providing that a defendant may withdraw a guilty plea after acceptance, but prior to imposition of the sentence, if the "defendant can show a fair and just reason for requesting the withdrawal"). Indeed, a district court's denial of a motion to withdraw a guilty plea will "be reversed only if its decision is arbitrary or unreasonable." *Buckles*, 843 F.2d at 471. In determining whether to allow a defendant to withdraw his guilty plea, the district court "may consider the totality of the circumstances surrounding the plea," evaluating: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial

13

resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* at 471–72 (citations omitted). When a defendant fails to satisfy the first two *Buckles* factors, the district court need not give considerable weight or particular attention to the remaining two factors. *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987). And importantly, after the district court imposes a sentence, the defendant may not withdraw his guilty plea, and the plea may only be set aside on direct appeal or collateral attack. Fed. R. Crim. P. 11(e).

We will not find an abuse of discretion if the district court conducted an extensive plea colloquy prior to accepting the guilty plea. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). And "[t]here is a strong presumption that the statements made during the colloquy are true." *Medlock*, 12 F.3d at 187. Consequently, a defendant bears a heavy burden to show that his statements under oath were false. *Rogers*, 848 F.2d at 168.

With these principles in mind, we conclude that the District Court did not abuse its discretion when it denied Peacock's three motions to withdraw his guilty plea. For the first two motions to withdraw the plea—both of which came before sentencing—the District Court correctly concluded that no "just reason" existed to allow Peacock to withdraw his guilty plea. The District Court addressed the first two *Buckles* factors when denying Peacock's motions to withdraw his guilty plea,

14

noting that Peacock was represented by competent counsel and that Peacock's plea was voluntarily and knowingly made.  Although the District Court addressed only those two *Buckles* factors, it was under no obligation to make any findings regarding the remaining factors.  *See Gonzalez-Mercado*, 808 F.2d at 801.

Additionally, the District Court did not abuse its discretion in denying Peacock's motion for reconsideration of the denial of his guilty plea because the motion was filed after the sentence was imposed, and Peacock had no right to withdraw his guilty plea at that point. *See* Fed. R. Crim. P. 11(e).  As such, the District Court's denials of Peacock's motions to withdraw his guilty plea were not "arbitrary or unreasonable," and as a result, were not abuses of discretion.  *See Buckles*, 843 F.2d at 471.

## IV.

Liberally construed, Peacock's brief does not abandon the argument that his guilty plea was unknowingly and involuntarily made.  Nevertheless, we find that Peacock's plea was knowing and voluntary and that the District Court did not abuse its discretion in denying Peacock's motions to withdraw his plea.  Accordingly, we affirm.

**AFFIRMED.**

15