[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-14434
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cr-00388-LCB-GMB-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NOLBERTO ORTEGA,
a.k.a. Manuel Topete-Rubio,
a.k.a. Tapia Gutierrez-Gonzalo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 27, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Nolberto Ortega pleaded guilty to one count of conspiracy to possess with intent to distribute and distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(C), and 846; one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h); and three counts of using a communication facility to commit a drug-trafficking crime, in violation of 21 U.S.C. § 843(b). On appeal, he argues that the district court abused its discretion when it denied his motion to withdraw his guilty plea. After review, we affirm.

## I.    Background

In 2019, a federal grand jury indicted Ortega along with eleven other individuals on multiple charges related to a drug conspiracy. Ortega pleaded guilty to five counts. The 34-page plea agreement detailed the maximum statutory punishment for each count and provided that the government would recommend that Ortega receive a guidelines reduction for acceptance of responsibility and that he receive a sentence "in the mid-range of the advisory guideline range, which [would] be determined at the sentencing hearing." The plea agreement further provided that the agreement was not binding on the court, the district court could reject the government's recommended sentence, and that Ortega did not "have the

2

right to withdraw his plea." The agreement also contained a sentence-appeal waiver, which provided that "[t]he defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to his satisfaction." Ortega initialed each page of the agreement and signed the agreement under the paragraph declaring that: he read and understood the provisions of the agreement; he had discussed the case and his rights with his counsel and was satisfied with counsel's representation; and that no other promises or representations had been made to him. Ortega's retained counsel, Joseph Ingram, also signed the agreement, attesting that he had advised Ortega of his rights and defenses and that Ortega "ha[d] conveyed to [him] that he underst[ood] this Agreement and consent[ed] to all its terms."

At the December 2019 change-of-plea hearing, Ortega confirmed that it was his initials and signature on the plea agreement. He affirmed that he had adequate time to discuss the case and the plea agreement with his counsel, and he was satisfied with counsel's representation. After explaining the rights Ortega would be giving up by pleading guilty and confirming that Ortega understood those rights, the government reviewed the charges and what it would have to prove at trial, which Ortega stated that he understood. The district court then reviewed the possible punishments for each count explaining that conspiracy to possess with

intent to distribute and distribution of controlled substances carried a term of "imprisonment for not less than 10 years"; money laundering carried a statutory maximum term of 20 years; and the three counts of using a communication facility to commit a drug crime carried a statutory maximum term of 4 years' imprisonment. Ortega affirmed that he understood the charges and the range of punishments.

The district court asked Ortega whether he had discussed the sentencing guidelines and how the guidelines applied to his case with his counsel, and Ortega responded, "Yes." The district court explained that the guidelines range would not be calculated until after the completion of the presentence investigation report ("PSI"), and that the ultimate sentence imposed may be different from "any estimate" that Ortega's counsel had provided. Ortega stated that he understood. Ortega and his counsel, respectively, each confirmed that they had discussed the plea agreement, it was fully explained to Ortega, and he understood its terms. The district court advised Ortega that the plea agreement was not binding on the court and that it could impose a sentence that was "substantially more or less severe than the contemplated sentence" but Ortega would "have no right to withdraw [his] plea of guilty." Ortega stated that he understood. Ortega asserted that no one had promised him anything or coerced him in any way to plead guilty. Ortega confirmed that it was still his desire to plead guilty, and that he was pleading guilty

because he was in fact guilty.  The district court accepted his plea, finding that it was knowingly and voluntarily entered.

After the United States Probation Office sent the PSI to the parties, Ingram—Ortega's retained counsel—filed a motion to withdraw as counsel, cursorily stating that "the attorney-client relationship ha[d] broken down to the point that it [was] not in [Ortega's] best interest" for Ingram to continue the representation.  The district court granted Ingram's motion and Ortega requested appointed counsel.  Ortega's request for appointed counsel was granted.

On June 18, 2020—approximately six months after the plea hearing—Ortega's new counsel filed a motion to withdraw Ortega's guilty plea.  Specifically, Ortega asserted that he entered the plea under duress because "he felt as though he had no choice and "he did not receive proper informaiton [sic] prior to entering his plea nor did he understand [the] same."  He maintained that Ingram rendered ineffective assistance and "mischaracteriz[ed] . . . the possible sentence."

At the hearing on the motion, Ortega testified that he retained Ingram to represent him and that Ortega met with him approximately four times prior to Ortega entering the plea agreement.  He asserted that Ingram never reviewed the evidence with him and never gave him a copy of the indictment (although he acknowledged that Ingram read the charges to him).  He maintained that he told Ingram that he did not know anything about the charges against him, but Ingram

told him that, if he went to trial, he would likely be found guilty and "go to jail for many, many, many years." According to Ortega, even though he told Ingram that he "didn't know anything about" the drug conspiracy, Ingram advised him to "[g]o ahead" and take the plea deal because the offer was for "not too much time."

Ortega asserted that Ingram assured him that his guidelines range would be 8 to 10 years' imprisonment, and he denied knowing or understanding that the conspiracy drug possession count carried a 10-year mandatory-minimum term. Ortega stated that the PSI reflected a much higher range of 22 to 30 years' imprisonment. He also asserted that Ingram never informed him of the impact that his criminal history would have on the guidelines calculation.

Ortega acknowledged the contrary statements that he made at the plea hearing but stated that he made them because he "was trusting [his] attorney." When asked whether he believed he had to do what Ingram said because he had hired Ingram, Ortega responded "[a] hundred percent." Ortega maintained that he was not guilty of the charges and he wanted to withdraw his plea and go to trial.

On cross-examination, Ortega confirmed that he understood what it meant to be "under oath" and that even though he was under oath at the plea hearing, he had lied. Ortega acknowledged that, at the plea hearing, the district court advised him that he faced a 10-year minimum sentence on the conspiracy drug possession count, but Ortega did not "understand that" because he was "bearing in mind what

6

[his] attorney had told [him] that [he] was going to be given." The government questioned Ortega about the contrary statements he made at the plea hearing concerning his guilt and his understanding of the plea agreement and the consequences, and Ortega again asserted that he relied on the advice of his counsel and his belief that there was an agreement in place where he would only receive 8 to 10 years' imprisonment.

Following the hearing, the district court denied the motion, determining that under "the totality of the circumstances, [Ortega] ha[d] not established a fair and just reason for the withdrawal of his guilty plea." The district court concluded that Ortega's assertions that his attorney met with him infrequently and coerced him into taking the plea were belied by the plea agreement and his testimony at the plea hearing, which established that the plea was knowing and voluntary. Additionally, the district court found that the government would suffer prejudice if the plea were withdrawn because witnesses and other resources "may not be readily available," due to the significant amount of time that had passed since Ortega's plea.

Ortega renewed his motion to withdraw his guilty plea prior to sentencing, which the district court again denied. At the sentencing hearing, the district court overruled Ortega's various objections to the PSI and determined that his advisory guidelines range was 360 months to life imprisonment. The district court sentenced Ortega to a total of 390 months' imprisonment. This appeal followed.

7

II.    Discussion

Ortega argues that the district court abused its discretion in denying his motion to withdraw his guilty plea because his testimony concerning Ingram and Ingram's erroneous advice established that his plea was not knowing and voluntarily, which is a fair and just reason for withdrawing a guilty plea.  He maintains that the district court's denial of his motion was arbitrary as evidenced by its *sua sponte* determination that the government would be prejudiced by the withdrawal of the plea because it would have a difficult time locating witnesses— an argument the government never made and is not supported given that some of his codefendants were still awaiting trial at that time.

"[T]here is no absolute right to withdraw a guilty plea prior to imposition of a sentence," and "[t]he decision to allow withdrawal is left to the sound discretion of the trial court." *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). "We review the denial of a request to withdraw a guilty plea for abuse of discretion. There is no abuse of discretion unless the denial is arbitrary or unreasonable." *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006) (quotation and internal citation omitted).

A defendant may withdraw an accepted guilty plea before sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  In determining whether the defendant has met his burden of

8

demonstrating a fair and just reason for withdrawal of the plea, a district court may consider the totality of the circumstances surrounding the plea, including the following factors: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Buckles*, 843 F.2d at 472 (internal citation omitted). "The good faith, credibility and weight of a defendant's assertions in support of [the] motion . . . are issues for the trial court to decide." *Id.* Furthermore, there is a "strong presumption" that statements made by a defendant during his plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Therefore, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

The district court did not abuse its discretion in denying Ortega's motion to withdraw his guilty plea. The crux of Ortega's argument was that the guidelines range proposed by the probation officer in the PSI was higher than Ortega expected based on Ingram's advice, and that this higher, unexpected, potential sentence undermined the knowing and voluntary nature of his plea. As the district court concluded, however, this assertion was belied by the record. The lengthy plea colloquy confirms that the district court complied with the requirements of Rule 11

for considering and accepting a plea, and that Ortega was advised of the potential sentences he faced. *See* Fed. R. Crim. P. 11(b) (setting forth requirements for considering and accepting a plea); *see also United States v. Bell*, 776 F.2d 965, 968 (11th Cir. 1985) (explaining that the district court's plea colloquy must address Rule 11's three "core concerns" by ensuring that: (1) the guilty plea is voluntary and free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant knows and understands the consequences of his plea).

Specifically, during the plea hearing, the district court advised Ortega that the sentence imposed may differ from any estimate provided to Ortega by Ingram, and Ortega confirmed that he understood. The district court later reiterated that the guidelines range would not be determined until after the PSI was prepared, and that Ortega's sentence could be more or less severe than the sentence contemplated by the plea agreement, but that Ortega would not be able to withdraw his plea on that basis, and Ortega again stated that he understood. The district court also advised Ortega as to the statutory maximum penalties as to each count. We presume the truth of Ortega's statements, and it was within the district court's discretion to determine that Ortega had not satisfied his heavy burden of showing that they were

false.[1]  *Medlock*, 12 F.3d at 187; *Rogers*, 848 F.2d at 168; *Buckles*, 843 F.2d at 471–72.

Furthermore, even though the government made no prejudice argument, the district court properly considered whether the government would be prejudiced by allowing Ortega to withdraw his guilty plea.  *See Buckles*, 843 F.2d at 474 ("Although a district court need not find prejudice to the government before it can deny a defendant's motion to withdraw, it may take this factor into account when assessing the defendant's motion.").  Finally, the timing of Ortega's motion weighs against his position because he did not move to withdraw his plea until after he received the PSI—several months after the acceptance of his plea.  *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987) (explaining that "a primary ground for denying plea changes" is a defendant's dissatisfaction with the sentence imposed (quotation omitted)).

Under the totality of the circumstances, the district court's denial of Ortega's motion to withdraw his guilty plea was not arbitrary or unreasonable.  *See Brehm*, 442 F.3d at 1298.  Accordingly, we affirm.

**AFFIRMED.**

---

[1] Notably, Ortega's lengthy plea agreement also contained this same information in writing, and Ortega initialed each page, signed the agreement, and attested that he read and understood its terms.  Ortega's purported mistaken belief that he would receive an eight- to ten-year sentence based on his counsel's advice simply was not reasonable in light of the plea agreement and the district court's discussion during the plea colloquy.