[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11413

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

                                            Plaintiff-Appellee,

*versus*

SEAN PATRICK FARRELLY,

                                            Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:19-cr-00044-MMH-PDB-1

_____

Before BRANCH, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Sean Patrick Farrelly pleaded guilty to "recruit[ing], entic[ing], transport[ing], obtain[ing], maintain[ing], patroniz[ing], and solicit[ing]" a minor "to engage in a commercial sex act," in violation of 18 U.S.C. section 1591(a)(1). He moved to withdraw his plea, and the district court denied the motion. Farrelly was then sentenced to thirty years in prison, followed by ten years of supervised release. He appeals the district court's denial of his motion and the substantive reasonableness of his sentence. We affirm.

## FACTUAL BACKGROUND

Farrelly lived with his girlfriend, Vicky Cole, and her teenaged boy and girl for several years. From March 2018 to February 2019, when he was arrested, Farrelly had sex with the girl. She was sixteen years old at the time.

Farrelly texted the victim from a cell phone to set up their sex acts. Before sex, he "primed [her] up" by having her "drink alcohol or smoke marijuana." After sex, he paid her in cash and cigarettes.

Eventually, the victim cooperated with law enforcement and made controlled calls to Farrelly to catch him. Law enforcement also uncovered incriminating evidence after executing a search warrant on Farrelly's residence and truck.

## PROCEDURAL HISTORY

The section 1591(a)(1) charge was the only count against Farrelly. The magistrate judge appointed Assistant Federal Defender Maurice Grant to represent him. Farrelly pleaded not guilty at his arraignment and went before the magistrate judge a couple of months later to change his plea to guilty.

During the change of plea hearing, the magistrate judge advised Farrelly of the rights he would be giving up by pleading guilty, the elements of the charge against him, the penalties and consequences of pleading guilty, and the sentencing process. Farrelly was also allowed to ask questions of Grant. At the end of the hearing, the magistrate judge noticed "from [Farrelly's] facial expression" that he "might be a little hesitant" about changing his plea. The magistrate judge told Farrelly that he "need[ed] to feel really comfortable with" the decision, and he responded that he "d[id]n't feel comfortable." The magistrate judge noted that "if [Farrelly] plead[ed] guilty, [he] really [would] have limited opportunities to withdraw the plea." Then, the magistrate judge decided "not [to] go further" so Farrelly could have time to discuss his decision with Grant and "really think about" what he was doing.

About a week later, Farrelly asked for—and received—another change of plea hearing. During the hearing, he said that no one had forced him to plead guilty, but that law enforcement had "indirectly . . . threatened" his family, including his adult daughter and Ms. Cole. He assured the magistrate judge that the threats

hadn't caused him to plead guilty. The magistrate judge found that Farrelly entered his plea knowingly, voluntarily, and intelligently and that he received "the advice and counsel of a competent law-yer," i.e., Grant. Farrelly agreed with those findings. The magis-trate judge mentioned that Farrelly had fourteen days to object to the forthcoming recommendation that the district court accept his guilty plea. The objection period, though typically waived, was not waived in this case. During the hearing, Farrelly asked Grant if he could "withdraw [his] plea later on," and Grant responded that he could not. Grant emphasized that Farrelly should plead guilty only if he was in fact guilty.

Farrelly didn't object to the magistrate judge's recommen-dation, and the district court accepted his guilty plea and found him guilty of the section 1591(a)(1) charge. About a month later, pro-bation submitted the initial presentence investigation report, which showed a guideline range of thirty years to life in prison. Less than two weeks after the report, Grant moved to withdraw as Farrelly's counsel because their attorney-client relationship "ha[d] devolved to the point" of being irreparably "severed." The magis-trate judge granted the motion and appointed Ronald Maxwell as Grant's replacement. Because Mr. Maxwell required "significant time to review the case" to address multiple issues that Farrelly had raised, the district court continued the sentencing hearing for about four months. About two months into the continuance, Farrelly moved to withdraw his guilty plea because he hadn't entered it knowingly, voluntarily, and intelligently.

In the motion, Farrelly contended that he had pleaded guilty because government agents threatened and coerced both him and those closest to him: Ms. Cole, his children, and his ex-wife. "[H]e felt he had no viable choice," he said, "but to proceed with a [guilty] plea and thus protect himself and others from further harassment and possible unfounded criminal charges." Farrelly claimed that he wanted to withdraw his plea for a while but didn't know how and that Grant didn't help him or tell him that he could object to the magistrate judge's recommendation or withdraw his plea "at any time"—"for any reason or no reason"—before the district court accepted it. Farrelly "denie[d] the allegation of sex with a minor" and "the concept of money for sex." He complained that "[h]e was never advised" that his guideline range could be thirty years to life after sentencing enhancements. And he asserted that the withdrawal of his plea wouldn't prejudice the government or waste judicial resources and that he moved to withdraw at the "earliest reasonable time" given the change in his legal representation. Under "the totality of the circumstances," said Farrelly, he "demonstrated . . . a fair and just reason to withdraw his guilty plea."

The district court held three hearings on the motion: two in January 2020 and one in December 2020. During the hearings, Grant testified that he told Farrelly during the second change of plea hearing that Farrelly couldn't withdraw his guilty plea later on. Grant also testified that he didn't advise Farrelly that Farrelly could withdraw his plea for any reason during the fourteen days that he had to object to the magistrate judge's recommendation.

And Farrelly testified that he would have withdrawn his plea if he had been properly advised.

After the hearings, the district court denied the motion because Farrelly hadn't shown a fair and just reason to withdraw his plea. The district court explained that Farrelly entered his plea knowingly, voluntarily, and intelligently, as reflected in his answers under oath during the two change of plea hearings. The district court didn't credit "his belated and wholly inadequate and illogical explanations for providing those answers." The district court found that Farrelly didn't want to withdraw his plea until after the district court accepted it and that he wouldn't have withdrawn his plea earlier if Grant had provided him better counsel. The presentence investigation report, the district court determined, had "prompted . . . Farrelly's desire to withdraw his guilty plea." The district court considered the factors in *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988), and concluded that they weighed against allowing Farrelly to withdraw his plea. The district court explained that Farrelly received close assistance of counsel from Grant, pleaded guilty "with full knowledge of the potential penalty he faced," and failed to "present a compelling explanation" for the five months between the entry of his plea and the filing of his motion to withdraw the plea. And the second change of plea hearing, the district court emphasized, had "readily satisfied all of the core concerns of Rule 11." The district court also noted that granting the motion "would prejudice the victim" by requiring her to "relive . . . traumatic experiences."

At the sentencing hearing, the district court stated the guideline range of thirty years to life in prison. Keeping the calculations as they were, the district court gave Farrelly credit for acceptance of responsibility and didn't enhance his sentence for obstruction of justice, despite the need for multiple hearings on his motion and his false testimony during the hearings. Before the parties discussed sentencing, the victim's father testified on her behalf. He described Farrelly as a "great manipulator" who "groomed" her to perform sex acts, and he shared the "tumult" that Farrelly had caused her, including "depression, outbursts of anger, . . . thoughts of suicide," and a panic attack in the courtroom before the hearing.

The government sought "a guideline sentence of imprisonment followed by a lifetime of supervised release" to "reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes" by Farrelly. The government pointed out Farrelly's "long history of domestic violence" that "appear[ed] to increase with age," and argued that time in prison hadn't deterred him from "harm[ing] women." Instead, the government said, he "moved on to a younger, more vulnerable person, someone . . . he should have been caring for, protecting[,] and parenting." The government noted that the victim "had no escape from him" because he "lived in her home," approached her in her bathroom and bedroom, and posed "as a parental figure" to her. And Farrelly, the government contended, presented a high risk of reoffending based on his criminal history.

The government also asserted that Farrelly contacted his children and Ms. Cole to "coerce . . . or tamper with [the victim] in some way so she would change the case against him."

Farrelly asked the district court to vary downward from the guideline range to between twelve and fifteen years in prison based on the average sentences in similar cases according to the 2019 Federal Human Trafficking Report. He argued that his criminal history really boiled down to the domestic violence. And the domestic violence, he said, involved only two victims—his ex-wife (the "one primary victim") and Ms. Cole—and stopped after he served time in prison. He emphasized that he had mostly been "well employed" and "a good provider for his family." In fact, his son testified: "[M]y dad's always been the best father anybody could ask for. And he's not a danger to the community or a predator." Farrelly asked the district court to consider that he had been doing "hard time" in the county jail for over two years related to the section 1591(a)(1) charge. He introduced into evidence a report by an expert stating that his risk of committing another sexual offense was low. And he noted that his offense didn't involve "physical abuse or threats," and that he hadn't committed "this type of conduct" before. He also argued that he "w[ould] suffer punishment beyond" his imprisonment because he would "be required to register as a sex offender" and, thus, his crime "w[ould] follow him his whole life."

The district court denied Farrelly's request for a downward variance and "impose[d] the low end of the guidelines": thirty

years in prison.  The district court began by listing the sentencing factors in 18 U.S.C. sections 3553(a)(1), (2), and (4).  The district court regarded the first factor, the nature and circumstances of Farrelly's offense, as "extraordinarily serious."  The district court explained that Farrelly was one of the victim's caregivers, in a supposedly committed relationship with her mother, and thus should have told her to abstain from marijuana and alcohol.  Instead, the district court noted, he plied her with those very substances to get her to have sex with him "over and over and over again."  By paying the victim for sex, Farrelly inflicted unfathomable damage on her, the district court said.  And the district court discerned "very little mitigation in . . . Farrelly's personal history and circumstances" because he had "a good childhood" and engaged in "incident after incident of domestic violence" as an adult, revealing "a complete lack of respect for the law in almost all of the . . . incidents."  The district court questioned the value of Farrelly's expert report because he lied to the expert when she assessed his risk of recidivism.  He told her that he hadn't used drugs, paid for sex, or had sex with a minor.

The district court didn't vary downward for three reasons: "the guidelines [we]re correctly calculated," Farrelly received the benefit of acceptance of responsibility (and no obstruction of justice) even though he didn't really accept responsibility or show any remorse, and his "hard time" in jail was mainly "self-inflicted" due to his motions to withdraw his plea and to continue the proceedings.  The district court determined that Farrelly needed "very

serious consequences to reflect the seriousness of [his] offense, to promote respect for the law, to accomplish any sort of deterrence, to accomplish just punishment for destroying the life of a child, and to protect the public." After observing that it had heard from the parties and the victim, read letters submitted by family and friends, and reviewed the expert report and the presentence investigation report, the district court sentenced Farrelly under 18 U.S.C. sections 3551 and 3553 to thirty years in prison, followed by ten years of supervised release. "[H]aving considered all of the various sentencing factors and the specific facts regarding the actual offense conduct," the district court expressly concluded that this sentence was "sufficient but not greater than necessary to satisfy the statutory purposes of sentencing."

## STANDARD OF REVIEW

We review for abuse of discretion a district court's denial of a defendant's motion to withdraw his guilty plea. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). We will find an abuse of discretion only if "the denial [wa]s arbitrary or unreasonable." *Id.* (quotation omitted). We also review for abuse of discretion the substantive reasonableness of the sentence imposed by the district court. *United States v. Irey*, 612 F.3d 1160, 1188–89 (11th Cir. 2010) (en banc). We will find an abuse of discretion only if the district court (1) didn't consider "relevant factors that were due significant weight," (2) gave "significant weight to an improper or irrelevant factor," or (3) made "a clear error of judgment in considering the proper factors." *Id.* at 1189.

## DISCUSSION

Farrelly appeals the district court's denial of his motion to withdraw his guilty plea and the substantive reasonableness of his sentence.  We address these issues in turn.

### The Denial of the Motion to Withdraw the Guilty Plea

Farrelly argues that he showed a fair and just reason to withdraw his guilty plea.  He contends that Grant, his first attorney, provided ineffective assistance of counsel in telling him that he couldn't withdraw his plea instead of advising him about his absolute right to withdraw his plea for any reason before the district court accepted it.  Farrelly would have moved to withdraw his plea sooner, he claims, if Grant hadn't misinformed him about his rights but had instead explained to him the importance of either the procedural rule governing the withdrawal of guilty pleas or the fourteen-day period for objecting to the magistrate judge's recommendation that the district court accept his plea.[1]  Farrelly also says that he only entered his plea because law enforcement threatened his family.  If he could withdraw his plea, he argues, his trial wouldn't expend any more judicial resources than a typical trial would, and the government wouldn't suffer any prejudice because state and

---

[1] For the first time in his reply brief, Farrelly argues that Grant also failed to advise him about sentencing enhancements and several other issues.  But, because these arguments come too late, we don't consider them on appeal.  *See* *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) ("Because he raises th[e] argument for the first time in his reply brief, it is not properly before us.").

federal law enforcement have been involved in the case for a while and all (or almost all) witnesses are local. Farrelly also asserts that he filed his motion "in a reasonably timely manner" given his change in counsel.

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). To determine whether the defendant showed a fair and just reason, we "consider the totality of the circumstances surrounding the plea." *Buckles*, 843 F.2d at 471–72. Generally, we focus on four factors: (1) "whether close assistance of counsel was available"; (2) "whether the plea was knowing and voluntary"; (3) "whether judicial resources would be conserved"; and (4) "whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* at 472. The first two factors are the most important. *See United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987) (giving little weight to the third and fourth factors). We commit to the district court's discretion any determinations about the "good faith, credibility[,] and weight of a defendant's assertions in support of" his motion to withdraw his guilty plea. *Buckles*, 843 F.2d at 472.

After weighing the testimony, the district court found that Farrelly didn't want to withdraw his guilty plea until after the presentence investigation report came out—over a month after the district court accepted Farrelly's guilty plea. This finding is supported by the record and within the district court's discretion. *Id.*

Because Farrelly didn't want to withdraw his plea until well after the district court accepted it, Grant's failure to inform him that he could withdraw it before its acceptance or to explain the significance of objecting to the magistrate judge's recommendation didn't have any effect.

In all other respects, Grant provided Farrelly close assistance of counsel. During both change of plea hearings, Farrelly testified that Grant told him about the section 1591(a)(1) charge and answered all his questions. During the first hearing, he also testified that he talked to Grant about the sentencing guidelines. And during the second hearing, he testified that he discussed his case fully with Grant, had enough time to talk to Grant, and was satisfied with—and didn't have any complaints about—Grant's representation. Also during the second hearing, when the magistrate judge asked whether Farrelly agreed that he had "the advice and counsel of a competent lawyer" in Grant, Farrelly said yes. Further, during the second hearing on the motion to withdraw the plea, Grant testified that Farrelly could—and did—call him from behind bars to discuss his case. Given Grant's availability and the "strong presumption" that a defendant's statements during change of plea hearings are true, *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994), the first *Buckles* factor weighs against finding a fair and just reason to withdraw the plea.

Although Farrelly now claims that his "primary reason for entering a guilty plea centered around the threats" against his family, he testified to the contrary during his second change of plea

hearing.  He testified—twice—that no one threatened or coerced him to plead guilty.  And he said that he was "confident" the threats against his family weren't causing him to plead guilty.  The district court credited this testimony over the assertions Farrelly made in support of his motion to withdraw his plea, and it was within its discretion to do so.  *See Buckles*, 843 F.2d at 472.  Farrelly doesn't give any other reason for doubting the knowing, voluntary, and intelligent nature of his plea, and none is apparent from the record.  Indeed, from the extensive change of plea hearings, we see that Farrelly's guilty plea was free from coercion and that he understood the nature of the charge against him and the consequences of his plea, including that his sexual offense carried registration requirements.  *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1289 (11th Cir. 2003) ("When a district court accepts a guilty plea, it must ensure that the three core concerns of Rule 11 of the Federal Rules of Criminal Procedure have been met:  (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." (quotation omitted)).  Thus, the second *Buckles* factor weighs against finding a fair and just reason to withdraw the plea.

Because the first two factors are the most important and they both weigh against a fair and just reason to withdraw the plea, we do not discern an abuse of discretion in the district court's

21-11413                Opinion of the Court                15

denial of Farrelly's motion to withdraw his guilty plea.  Thus, we affirm.[2]

### The Substantive Reasonableness of the Sentence

Farrelly contends that his sentence of thirty years in prison is substantively unreasonable and that twelve to fifteen years would suffice to punish him.  In imposing its sentence, the district court "fixate[d]," he says, on the seriousness of his offense even though, "in terms of sex trafficking cases, this case involved typical but somewhat mild mannered . . . conduct."  Farrelly explains that he didn't bind or kidnap the victim, take her from her home, imprison her, inflict physical violence on her, use a firearm, or employ "any particularly aggravating circumstances."  As to his criminal history, Farrelly notes that since his release from prison for his most recent domestic violence incident, he "had a clean record," and he had no history of "inappropriate sexual conduct with anyone, much less a minor."  Farrelly describes himself as a good provider and "a family man" and points to his expert's report as evidence of his low risk of sexually reoffending.  In his view, the district court abused its discretion when it gave undue weight to the seriousness of his offense; disregarded his age, low risk of recidivism, and lack of criminal history for sexual offenses like prostitution; and created a disparity between his sentence and the average sentences for sex

---

[2] We also note that "enough judicial resources have been expended in this case." *Buckles*, 843 F.2d at 474.

trafficking involving minors according to the 2019 Federal Human Trafficking Report.[3]

The district court considered not only all section 3553(a) sentencing factors, including the guideline range for Farrelly's sentence, but also the "specific facts" of his case. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1260 (11th Cir. 2015). Then, it imposed a sentence at the bottom of the guideline range. We generally expect a sentence in the guideline range to be substantively reasonable. *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014). That the sentence fell well below the statutory maximum of life imprisonment, *see* 18 U.S.C. §§ 1591(a)(1), (b)(2), also supports its substantive reasonableness, *see United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016) ("A sentence imposed well below the statutory maximum penalty is another indicator of reasonableness.").

Farrelly complains that the district court paid too much attention to the seriousness of his offense. But "[t]he decision about how much weight to assign a particular sentencing factor is 'committed to the sound discretion of the district court.'" *Rosales-Bruno*, 789 F.3d at 1254 (quoting *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008)). And because "[c]hild sex crimes are among the most egregious and despicable of societal and

---

[3] Farrelly argues, for the first time in his reply brief, that the district court's sentence duplicated enhancements that he received. This argument also comes too late for us to consider. *See Lovett*, 327 F.3d at 1183.

criminal offenses, . . . courts have upheld lengthy sentences in these cases as substantively reasonable." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009). In Farrelly's view, his offense wasn't that serious because he didn't force his victim from her home or become physically violent with her. But the district court observed that she wasn't safe from him in her home and that he inflicted plenty of damage on her, even though it wasn't through physical violence. We discern no abuse of discretion in treating Farrelly's offense as particularly serious.

Farrelly also faults the district court for overlooking his low risk of recidivism and his criminal history. But the district court didn't overlook these factors. It explicitly rejected his expert report as evidence of his risk of recidivism because he lied to the expert, and it agreed with the government that his criminal history was a better indicator of his risk of recidivism. Farrelly focuses on how likely he is to commit another sexual offense like this one. But the district court didn't have to approach the issue so narrowly. The statutory purposes of sentencing more broadly include "promot[ing] respect for the law" and "afford[ing] adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)–(B). The district court determined that Farrelly's sentence was "sufficient but not greater than necessary to satisfy the statutory purposes of sentencing." And the district court didn't abuse its discretion in making this determination. *Cf. Irey*, 612 F.3d at 1222 (finding a sentence set at the statutory minimum to be substantively unreasonable

because the district court "discounted the value of general deterrence for sexual crimes against children").

Finally, Farrelly says that the district court created an unwarranted sentencing disparity between him and similar defendants. He points to average sentences as support. But "the statistics [he] cites are bare numbers without context and, therefore, do not persuade us that his sentence[ is] unreasonable." *United States v. Campbell*, 491 F.3d 1306, 1317 (11th Cir. 2007).

Because Farrelly's sentence is not one of the "rare" substantively unreasonable sentences resulting from an abuse of a district court's "very broad discretion" in sentencing, *United States v. McQueen*, 727 F.3d 1144, 1156 (11th Cir. 2013), we affirm.

## CONCLUSION

Because the district court didn't abuse its discretion when it denied Farrelly's motion to withdraw his plea or when it imposed his sentence, we affirm.

**AFFIRMED.**